·KENNEBEC WATER DISTRICT

*vs.*

CITY OF WATERVILLE, and others.

Kennebec.     Opinion December 27, 1902.

*Water Company.    Eminent Domain.    Instructions to Appraisers.    Franchise.*
*Valuation.    Damages.    Evidence.    R. S., c. 46, § 23.    Priv. and*
*Special Laws, 1881, c. 141; 1887, c. 59; 1891, c. 14;*
*1893, c. 352; 1899, c. 200.*

An act incorporating the plaintiff district authorized it to acquire by the exercise of the right of eminent domain, "the entire plant, property and franchises, rights and privileges now held by the Maine Water Company within said district and the towns of Benton and Winslow." The act further provides that appraisers appointed by the court "shall, upon hearing, fix the valuation of said plant, property and franchises at what they are fairly and equitably worth, so that said Maine Water Company shall receive just compensation for all the same," but that "before a commission is issued to the appraisers, either party may ask for instructions to the appraisers." Both parties having asked for instructions, and the questions of law arising thereon having been reported to the law court, the court is of opinion that the appraisers should be instructed in accordance with the following principles:—

1.   The plaintiff, if it takes anything, must take all the property held by the Maine Water Company in the Kennebec Water District and in Benton and Winslow, whether specifically named in the act or not. This includes the real estate or other property, if any, not connected with the water system, it includes the plant or physical system, and it includes all franchises, rights and privileges held by the water company, exercised or capable of being exercised.

2.   The Maine Water Company is a quasi-public, or public service, corporation, and is entitled to charge reasonable rates for its services, and no more.

3.   The basis of all calculation as to the reasonableness of rates to be charged by a public service corporation is the fair value of the property used by it for the convenience of the public.

4.   At the same time, the public have the right to demand that the rates shall be no higher than the services are worth to them, not in the aggregate, but as individuals.

5. Summarized, these elemental principles are, the right of the company to derive a fair income based upon the fair value of the property at the time it is being used for the public, taking into account the cost of maintenance or depreciation, and current operating expenses, and the right of the public to have no more exacted than the services in themselves are worth.

6. The reasonableness of the rate may also be affected, for a time, by the degree of hazard to which the original enterprise was naturally subjected, that is, such hazard only as may have been justly contemplated by those who made the original investment, but not unforeseen or emergent risks. And such allowance may be made as is demanded by an ample and fair public policy. If allowance be sought on account of this element, it would be permissible at the same time to inquire to what extent the company has already received income at rates in excess of what would otherwise be reasonable, and thus has already received compensation for this hazard.

7. The franchises granted to the Waterville Water Company by ch. 141 Private and Special Laws of 1881, as amended by ch. 59, Private and Special Laws of 1887, and ch. 14, Private and Special Laws of 1891, and to the Maine Water Company by ch. 352, Private and Special Laws of 1893, are not exclusive. Neither are they perpetual and irrevocable. They are subject to legislative repeal. In fixing the value of the franchises, both of these considerations are entitled to their just weight. If the business of the company is now practically exclusive, in that it has no competitor, that fact also may and should be considered by the appraisers when they fix the value of the property of the company as a going concern.

8. In determining the present value of the company's plant, the actual construction cost thereof, with proper allowances for depreciation, is legal and competent evidence, but it is not conclusive, nor controlling.

9. The request that "under no circumstances can the value of the plant be held to exceed the cost of producing at the present time a plant of equal capacity and modern design" should not be given. Among other things, it leaves out of account the fact that it is the plant of a going concern, and seeks to substitute one of the elements of value for the measure of value itself.

10. The actual rates which may have been charged heretofore, and the actual earnings, are both admissible and material in determining the value of the plant. The value of the evidence, however, will depend upon whether the appraisers shall find that the rates charged have been reasonable.

11. The quality of water furnished and of the service rendered, and the fitness of the plant and of the source of water supply to meet reasonable requirements in the present and future are material upon the question of present value.

12. The appraisers should regard the franchises of the company as entitling it to continue business as a going concern, but subject to all proper legal duties governing public service companies.

13. Faithfulness or unfaithfulness shown by the water company in the past in the performance of public duty to furnish pure water at reasonable rates is not a proper matter for consideration. It is the franchise as it now exists which is to be taken and paid for.

14. The liability of the company to legal forfeiture of its franchises on account of past unfaithfulness and misbehavior is not to be considered.

15. If the water company and its predecessors have actually received more than reasonable rates hitherto, the excess cannot be deducted from the amount to which the company would otherwise be entitled.

16. No compensation can be allowed to the Maine Water Company for incidental damages to its other property having no physical connection with, or contiguity to that taken, and having no relations with it except those which grow out of common ownership, nor for the impairment of the economy and efficiency of administration which are obtained by the combination of many water systems under one management.

17. The real estate or other outside property not directly connected with the water system should be appraised at its fair market value, not at forced sale, but at what it is fairly worth to the seller, under considerations permitting a prudent and beneficial sale thereof.

18. The appraisers may properly consider what the existing system can be reproduced for. But the cost of reproduction will not be conclusive. It will be evidence having some tendency to prove present value. The inquiry along the line of reproduction should be limited to the replacing of the present system by one substantially like it.

19. In estimating even the structure-value of the plant, allowance should be made for the fact, if proved, that the company's water system is a going concern with a profitable business established, and with a present income assured and now being earned.

20. So far as the water system if practically exclusive, the element of good-will should not be considered.

21. In fixing structure-value, while considering the fact that the system is a going concern, the appraisers should also consider, among other things, the present efficiency of the system, the length of time necessary to construct the same de novo, and the time and cost needed after construction to develop such new system to the level of the present one in respect to business and income, and the added net income and profits, if any, which by its acquirement would accrue to a purchaser during the time required for such new construction, and for such development of business and income. But these are to be considered "among other things." They are not controlling. Their weight and value must depend upon the varying circumstances of each particular case.

22. In addition to structure-values, the appraisers should allow just compensation for all the franchises, rights and privileges to be taken.

23. The value of the franchise depends upon its net earning power, present

and prospective, developed and capable of development, at reasonable rates; and the value to be assessed is the value to the seller, and not to the buyer.

24. In considering prospective development of the use of a franchise, consideration must also be had of the fact that further investment may be necessary to develop the use, and of the further fact that at any stage of development, the owner of the franchise will be entitled to charge only reasonable rates under the conditions then existing.

25. Subject to all the foregoing limitations, the owner is entitled to any appreciation due to natural causes.

26. The fact that the franchises are to be taken in no respect impairs their value for the purposes of appraisal.

27. The property to be taken, both plant and franchises are to be appraised, having in view their value as property in itself and their value as a source of income. There are these elements of value, but only one value of one entire property is to be appraised in the end. These elements necessarily shade into each other.

28. The capitalization of income even at reasonable rates cannot be adopted as a sufficient or satisfactory test of present value. But while not a test, present and probable future earnings at reasonable rates are properly to be considered in determining the present value of the system.

29. The appraisers should be instructed to receive and consider all evidence offered, so far as admissible under the general rules of law, which is pertinent under the rules stated in the requests of the parties, so far as they have been approved, and as limited or explained, in the opinion of the court.

See *S. C.* 96 Maine, 234.

On report. Instructions to appraisers given by the court to determine the valuation of property of the Maine Water Company and acquired by the plaintiff by the exercise of the right of eminent domain.

In this court below, the parties, in accordance with the provisions of the Act of the Legislature authorizing the Water District to take over the property, filed written requests for instructions which they. desired and contended ought to be given by the court to the appraisers to guide them in determining the valuation of the property to be taken over. The case was then reported; the bill, answer, replication and docket entries making part of the case, with a stipulation that all legislation of Maine relating to the Maine Water Company and the Waterville Water Company is to be referred to by either party in argument.

The Kennebec Water District requested the court to instruct the appraisers as follows:—

1.   The appraisers are directed to state separately in their report what part of the amount fixed by them as the valuation of the plant, property and franchises of the Waterville Water Company and the Maine Water Company is fixed as the value of the plant and property and what part is fixed as the value of the franchises, and further to state what property and what franchises, they have considered in fixing these values.

2.   Upon the question of the value of the companies' plant and property, the actual cost of said plant and property together with proper allowances for depreciation is legal and competent evidence, and for the purpose of fixing this actual cost the companies are directed to produce before the appraisers all book accounts and documents containing entries which bear on the subject.

3.   Under no circumstances can the value of the plant of the companies be held to exceed the cost of producing at the present time a plant of equal capacity and modern design.

4.   The Waterville Water Company and the Maine Water Company are public service corporations and as such have the right to charge reasonable rates only.   What would be reasonable rates can be determined only after and by means of a valuation of the companies' property.   Accordingly the actual rates which may have been charged by the companies, and their actual earnings, have no bearing on the value either of the companies' plant or property or of their franchises, and are immaterial.

5.   The selling value of the capital stock in the companies has no bearing on the valuation of the companies' plant, property or franchises, and is immaterial.

6.   The quality of the water furnished by the companies and of the service rendered by them and the fitness of their plant to meet the reasonable requirements of consumers, in the present and the future, are material questions in fixing the valuation of the companies' plant and property.

7.   The franchises of the Waterville Water Company are fixed by Chap. 141, Private & Special Laws of 1881, as amended by Chap.

59, Private & Special Laws of 1887, and Chap. 14, Private & Special Laws of 1891.

8.   The franchises of the Maine Water Company material to these proceedings are those of the Waterville Water Company and those granted by Private & Special Laws of 1893, Chap. 352, and no others.

9.   The appraisers shall regard the franchises of the companies as entitling them to continue business as a going concern, but subject to all proper legal rules governing public service companies; it being further understood that said franchises are in no way exclusive. The franchises shall not be otherwise appraised or valued.

10.   Upon the question of the value of the companies' franchises, the question of the fitness of the source of supply granted by these franchises with reference to the reasonable requirements of the consumers in the present and the future, is material and competent.

11.   In fixing the value of the companies' franchises, the appraisers may give such regard as is demanded by ample and fair public policy to the past investment, risks and services of the companies, and to the reasonably just expectations which those who made the investment had in mind when so investing, and also to the faithfulness or unfaithfulness shown by the companies in the performance of their public duty and obligation to furnish pure water at reasonable rates.

12.   Competent evidence may be received by the appraisers tending to prove or refute the allegations contained in paragraph 13 of plaintiff's bill, and in case said allegations are found to be true in whole or in part, said facts are to be considered as bearing on the value of the companies' franchises.

13.   Competent evidence may be received by the appraisers tending to prove or refute the allegations contained in paragraph 14 of plaintiff's bill, and in case it is found that said companies have actually received more than reasonable rates for the services rendered since operations begun, then the amount of such excess shall be deducted from the amount to which the companies would otherwise be entitled.

14.   The appraisers may view the premises so far as they see fit.

15.   They shall procure a stenographer to be in attendance who shall take notes of all testimony, and furnish transcripts thereof.

16.   They shall make a report showing their doings and findings under each branch of the instructions above given and also the date as of which the valuation was fixed.

The defendants requested the court to instruct the appraisers as follows:—

1.   If the court shall be of the opinion that either party at this stage of the case is entitled to instructions under the eighth section of the Act above mentioned, the defendants respectfully ask the court for the following instructions to said appraisers; the defendants understanding that preliminary requests for instructions are authorized by said eighth section, and that they will be asked for on the part of the plaintiff, and not deeming it right that requests should be presented and considered by the court on the one part and not on the other.

2.   That by the terms of chap. 200 of the Private and Special Laws of 1899 every item of property within the limits of the Kennebec Water District and of the towns of Benton and Winslow included in the water system of the Maine Water Company at the date selected for appraisal, or then used or usable in connection therewith, whether specifically enumerated in said Act or not, together with all real estate within said District then held by said Maine Water Company, is to be taken from said Water Company, and every such item and every valuable contract, right, privilege or franchise, exercised or capable of being exercised, within the territory aboved named, must be considered and allowed for by the appraisers, separately or otherwise.

3.   That any increase of pecuniary obligation or burden or duty, or any damage to, or impairment of the value of its remaining property or franchises, in any way resulting to said Maine Water Company by reason of the exercise of the right of eminent domain contemplated by said Act of 1899, should be considered by said appraisers, and just compensation therefor should be included in their award.

4.   That the real estate or other outside property not directly connected with the water system, so far as included in the taking contemplated by this act, should be appraised at its fair market value, not at

forced sale, but at what it is fairly worth to the seller, under conditions permitting a prudent and beneficial sale thereof.

5.   That, as to the remaining property constituting the water system to be taken, and the franchises, rights and privileges connected therewith, neither the total construction-cost of the entire water system, measured at the date selected for valuation, nor such construction-cost less wear and tear and depreciation, nor such construction-cost, thus reduced, and afterwards increased by any adjudged percentage or bonus of profit thereon, can constitute the legal criterion of the total values to be awarded under the terms of this Act.

6.   That neither can the reproduction-cost thereof, at the date thus selected, either new or in its then condition, constitute the legal criterion of said total values.

7.   That the cost, at the date thus selected, of replacing said entire water system by a new one, differently constructed, but equal or even superior in efficiency to the one now existing, is not the legal criterion of said total values.

8.   That, in order to determine even the structure-value of said water system, and to award just compensation to said Maine Water Company therefor, under the terms of this Act, a proper sum must be allowed by the appraisers, in their sound judgment, separately or otherwise, in addition to its value as otherwise established, for the fact, if proved, that such water system is not merely an aggregate of materials fitted for use, without actual business, service, connections, takers or income, but a going concern, with a profitable business and good-will already established and with a present income assured and now being earned.

9.   That in determining the amount thus to be added to measure adequately even the structure-value of said water system, the appraisers should consider, among other things, the present efficiency of said system, the length of time necessary to construct the same de novo, the time and cost needed, after construction, to develop such new system to the level of the present one in respect to business and income, and the added net incomes and profits, if any, which, by its acquirement as such going concern, would accrue to a purchaser during the

time required for such new construction, and for such development of business and income.

10. That in addition to the items to be valued under request 4, and all the structure-values of said water system to be determined in accordance with requests 8 and 9, the appraisers, under the terms of this Act, must consider and allow for, as a material and necessary element of value, by separate item or otherwise, all and several the franchises, rights and privileges, whether now used or capable of being used, of the Maine Water Company, so far as they relate in any manner to the territory included within the Kennebec Water District and the towns of Benton and Winslow, including specifically all the rights of said Company to supply water to municipalities and to all the inhabitants within the entire territory above named, all rights incidental thereto, or connected therewith, and the right to receive and appropriate the net incomes and revenues from its business enterprise or undertaking considered as a whole.

11. That the value of a franchise depends on its productiveness or net earning power, present and prospective, developed or capable of development, within the entire territory embraced by the taking; that whenever net earning power, or net incomes and revenues, is to be determined under this Act, it is to be so determined under reasonable water rates, after due allowance for operating-expense and maintenance or depreciation; that the value of all franchises, rights and privileges to be taken is their full value, not to the taker but to the seller; that "just compensation" under this Act means full compensation for every thing or element of value taken, and that nothing less than such full compensation can be legally awarded, either under the terms of this Act, or under the requirements of the Constitution of this State and of the United States.

12. That the fact that the franchises, rights and privileges of said Maine Water Company are to be taken under this Act in no respect destroys or impairs their value to said Water Company, and cannot diminish or affect the amount to be awarded as just compensation therefor.

13. That in estimating said franchises, and the present and future net earning power included therein, the appraisers should

duly weigh the nature and extent of these franchises, rights and privileges, whether the same are perpetual or otherwise; also, so far as proved, the rights of the Maine Water Company under all existing contracts and the value thereof; the extent of existing business and of the net incomes or revenues now derived or derivable therefrom, the existing demand for new and additional services, and for the development and increase of said business, incomes and revenues, the past, and probable future, growth or decay of the territory now served, or capable of being served under said franchises, in population, in wealth, and in needs and uses for water to be supplied by some water system, and the past, and probable future, increase or decrease in said net incomes and revenues as affected by these or other surrounding conditions; also the fact that by said taking said Water Company will be wholly and forever deprived of all said franchises, rights, privileges, earning-power, incomes and revenues, and that it is the duty of said appraisers to make, in their sound judgment, just and full compensation to said Water Company for all the same.

14.    That the true measure of value, under the terms of this Act, and under the requirements of the Constitutions of this State and of the United States, is just and full compensation to said Water Company for each and every thing of value of which it is to be deprived by this taking; that in addition to the special property covered by request 4, the plant, property, franchises, rights and privileges now held by said Water Company within the territory embraced by this Act, contain distinct elements of value, first, as an asset, and, second, as a source of income, having, or not, present and prospective net earning-power; that by the taking under this Act said Water Company will be deprived wholly and forever, both of said asset, and of said source of income; that just compensation to said Company for what is thus compulsorily taken from it requires that the sum to be awarded as a substitute therefor shall be the full equivalent of every thing taken, both in value as an asset, and in net earning power, and such a sum as, in the sound judgment of the appraisers, will be the full money equivalent of all the plant, property, franchises, rights and privileges aforesaid, and, at the same time, if prudently invested at fair current rates of interest, will yield to said Company the same

net incomes and revenues, and for the same term, that it will be deprived of by this taking; the net earning power, incomes and revenues aforesaid to be determined under reasonable water rates, after due allowance on the one hand for operating-expense and maintenance or depreciation, and, on the other hand, with due regard to the probable future increase or decrease thereof under all conditions affecting the same.

15.    That the Constitution of the United States, independent of the terms of this Act, requires that just compensation should be made to said Water Company for all its plant, property, franchises, rights, privileges, good-will, incomes and revenues to be taken under this Act, at their full value not to the taker, but to the seller; and, to secure just and full compensation for all the same the defendants are entitled, under the Constitution of the United States, to have the court give, and the appraisers follow, as legal rules and material elements of value, in language or in substance, the several foregoing requests, and this request applies to each of said foregoing requests, separately and without reference to any other.

16.    All legal evidence pertinent under either of the foregoing requests, or tending to show the fair market value of the property, rights, privileges and franchises taken, so far as admissible upon general rules of law, shall be received by said appraisers at the hearing before them.

Paragraphs 13 and 14 of the plaintiffs' bill, upon which requests 12 and 13 of the plaintiffs seemed in part to be based, were as follows:—

"13.    Your complainant alleges that in spite of the duty imposed upon said Waterville Water Company by its charter to supply pure water, it has constantly, from the commencement of its operations to the time of the conveyance and surrender of its property and powers to the Maine Water Company, and said Maine Water Company from that time until now, furnished water so polluted, foul, unclean, impure and unwholesome as to be utterly unfit for drinking purposes or general domestic use, and a constant menace to the health and lives of the people using the same.    Whereby said Waterville Water Company and said Maine Water Company, have utterly forfeited

their rights and franchises to operate as water companies within said Kennebec Water District, and the towns of Benton and Winslow, and have rendered themselves liable to such processes as are appropriate to work legal forfeiture of said rights and franchises.

14. Your complainant further alleges that in spite of the duty of said water companies to render service at reasonable rates, said companies established and have always maintained and are now maintaining a schedule of rates or charges for services utterly disproportionate to the cost of the plant and the expense of maintaining the same, and so unreasonable, excessive and extortionate that said companies have for this reason utterly forfeited their rights and franchises to operate as water companies within said Kennebec Water District, and the towns of Benton and Winslow, and have rendered themselves liable to such processes as are appropriate to work legal forfeiture of said rights and franchises."

*H. D. Eaton, G. K. Boutelle; E. R. Thayer,* of the Boston bar, for plaintiff.

Counsel cited among other cases: *Lumbard* v. *Stearns,* 4 Cush. 60, 61; *Hangen* v. *Albina Light & Water Co.,* 21 Ore. 411, 14 L. R. A. 424; *Memphis & Little Rock Railroad Co.* v. *Railroad Commissioners,* 112 U. S. 609, 619; Morawetz on Priv. Corp. 2nd ed. vol. 2, c. 11, §§ 922-938; *Rockland Water Co.* v. *Camden & Rockland Water Co.,* 80 Maine, 544, 1 L. R. A. 388; *Long Island Water Supply Co.* v. *Brooklyn,* 166 U. S. 686, 697; *People* v. *Bristol, etc., Turnpike Co.,* 23 Wend. 236; *Capital City Water Co.* v. *State of Alabama, ex rel. Gordon Macdonald,* 105 Ala. 406, 29 L. R. A. 743; *Farmers' Loan and Trust Co.* v. *Galesburg,* 133 U. S. 156; *Palestine Water & Power Co.* v. *Palestine,* 91 Tex. 540, 40 L. R. A. 203; Morawetz on Priv. Corp. § 1024, and cases cited; Const. Maine, Art. 1, § 21; *Barron* v. *Baltimore,* 7 Pet. 243; *The Northern Transportation Co.* v. *Chicago,* 99 U. S. 635; *Bauman* v. *Ross,* 167 U. S. 548, 582, 583; *Ripley* v. *Great Northern Railway Co.,* 10 Ch. App. 435; *West River Bridge Co.* v. *Dix and The Town of Brattleboro' and Dummerston,* 6 How. 507, 534; *Bank of Augusta* v. *Earle,* 13 Pet. 519, 595; Public Laws, 1885, c. 378, §§ 1-13; *Cobb* v. *Boston,* 109 Mass.

438, 444; *Maynard* v. *Northampton,* 157 Mass. 218; *Jacksonville Railway Co.* v. *Walsh,* 106 Ill. 253; *White* v. *Commissioners,* 22 L. T. N. S. 591; *Pile* v. *Pile,* 3 Ch. D. 36; 15 Harv. Law Rev. 267, 268; *Crescent City R. R.* v. *Assessors,* 51 La. Ann. 335; *St. Charles Railway Co.* v. *Assessors,* 51 La. Ann. 459; *Hamilton Gas Light & Coke Co.* v. *Hamilton City,* 146 U. S. 258, 268; *Farrington* v. *Putnam,* 90 Maine, 405, 38 L. R. A. 339; *Greenwood* v. *Union Freight Railroad Co.,* 105 U. S. 13, 17, 19, 22.

*O. D. Baker; J. W. Symonds, D. W. Snow, C. S. Cook, and C. L. Hutchinson; H. M. Heath,* for defendants.

Counsel cited among other cases: *Shoemaker* v. *U. S.* 147 U. S. 282, 290; *London Tramways Case,* 2 Q. B. (1894,) 205; *In re The Kirkleatham Local Board and the Stockton and Middlesborough Water Board,* 1 Q. B. Div. (1893,) 375, 387; House of Lords, App. Cases, (1893,) 449; *Ames* v. *Railway Co.,* 64 Fed. Rep. 176; *Capital City Gas Co.* v. *Des Moines,* 72 Fed. Rep. 829, 843; *Fairbank* v. *U. S.,* 181 U. S. 283, 300.

SITTING: WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SAVAGE, J.    By ch. 200 of the Private and Special Laws of 1899, the Kennebec Water District was incorporated, and by § 6, it was empowered to acquire, by the exercise of the right of eminent domain, "the entire plant, property and franchises, rights and privileges now held by the Maine Water Company within said district and said towns of Benton and Winslow, including all lands, waters, water rights, dams, reservoirs, pipes, machinery, fixtures, hydrants, tools, and all apparatus and appliances owned by said company and used in supplying water in said district and towns, and any other real estate in said district." This Act was held constitutional and valid, in *Kennebec Water District* v. *Waterville,* 96 Maine, 234. The Act further provides that in the process of the condemnation proceedings, the court shall appoint three appraisers for the purpose of fixing the valuation of the property mentioned in section 6; that the "appraisers shall, upon hearing, fix the valuation of said plant, prop-

erty and franchises at what they are fairly and equitably worth, so that said Maine Water Company shall receive just compensation for all the same," and that "upon payment or tender by said district of the amount fixed, and the performance of all other terms and conditions imposed by the court, said entire plant, property, franchises, rights and privileges shall become vested in said water district."

It is further provided that "before a commission is issued to the appraisers, either party may ask for instructions to the appraisers, and all questions of law arising upon said requests or upon any other matters in issue may be reported to the law court for determination before the appraisers proceed to fix the valuation of the property." And it is at this last stage that the proceedings have now arrived. The bill in equity for the judicial appraisal and condemnation of the property having been sustained, *Kennebec Water District* v. *Waterville,* supra, both parties have asked for instructions to the appraisers, and the questions of law arising upon the requests for instructions have been reported to this court for its determination.

To say the least, the method thus authorized and adopted is an anomalous one. The questions before the court, which are comprehensive in scope and minute in detail, in effect, relate to the admissibility of evidence, and yet they must be decided before the court knows, or can know, what specific evidence will be offered or relied upon, or to what conditions the evidence will be applicable. In such case, it is evident that the answers must be general in character. The conditions surrounding properties like the one here proposed to be taken are so variant that it is difficult, and in some particulars impossible, to lay down rules of value which will properly apply to all cases without modification. It was intimated in *Ames* v. *Un. Pac. Ry. Co.,* 64 Fed. Rep., at p. 178, that no hard and fast rule could be made applicable to all properties under all conditions.

And it may be said further that, owing to this fact, and to the fact that in scarcely any two cases are the statutes authorizing condemnation proceedings alike, so far as they provide for an estimate of the different elements of value, the expressions of other courts and results arrived at by them are frequently of less authority than they otherwise would be.

It should be noticed that this is a bill in equity to be heard and determined, except as otherwise provided, according to the practice in equity. The hearings, except upon questions of law reserved upon report or exceptions, are to be before a single justice. A single justice is to make all necessary orders and decrees. And the act contemplates that the justice who directs the issuing of a commission to the appraisers may instruct them in regard to the manner of the performance of their duties. The requests for such instructions can be considered by this court only when they raise questions of law. So we construe the act in question. In this view, plaintiff's requests 1, 14 and 15 are not open for consideration by this court. They relate to details of procedure, and raise no questions of law. They relate to questions concerning which the sitting justice may, in his discretion, give or withhold instructions, according as he may think they are, or are not, practicable, and useful to the parties, the appraisers and the court. The same remarks apply to plaintiff's request 16 in part. Of course, the appraisers must make a report of their doings, and the statute requires that in their report they shall state the date as of which the valuation is fixed. But beyond this, it is for the sittting justice below to pass upon this request, and not for this court.

Before entering upon a consideration of the requests seriatim, we think it will be expedient to discuss certain general propositions, which concern and must qualify or limit the answers to be given to many or all of the requests.

First, as to the subjects of valuation. In substance, it is claimed by the defendants, request 2, and conceded by the plaintiff, that the latter, if it takes anything, must take every item of property held by the Maine Water Company in the Kennebec Water District (the City of Waterville and the Fairfield Village corporation) and in Benton and Winslow at the date of the appraisal, whether specifically named in the Act or not. We think it must be so held. And for every such item of value, the Maine Water Company is entitled to "just compensation." This includes the real estate or other property, if any, not connected with the water system, it includes the plant, or physical system, real and personal, it includes all the franchises,

rights and privileges held by the Maine Water Company in the territory described, except the franchise to be a corporation. It is unnecessary to particularize further. The plaintiff criticises the use of the phrase "capable of being exercised," in speaking of franchises in request 2. But we think it is unobjectionable. Whatever franchise the Maine Water Company holds in this territory is to be taken from it, and must be paid for. Its existence is the criterion, not whether it is being exercised or not. *Joy* v. *Grindstone-Neck Water Co.*, 85 Maine, 109. It may be doubted whether the Maine Water Company has any franchise in this territory which it is not now exercising. It has some franchises which undoubtedly will be more fully exercised than at present, in the course of the development of its system, if it is allowed to continue in possession of it. It would be, however, rather the extension of the use or exercise of a franchise, than the exercise of an unused franchise.

Secondly, as to reasonable rates. We think it is clear that the pecuniary value of the property of the Maine Water Company, both plant and franchises, depends, to a considerable extent, upon the financial returns it can be made to yield to the stockholders—that is, upon its net income. The franchise or right to do business, if unproductive, is of little value; and it stands to reason that the plant as a structure, irrespective of franchise, if the business were profitable, would be worth more, and would sell for more, than if the business were unprofitable. The basis of income, of course, is the tolls charged and received. If the Maine Water Company were doing a private business, knowing its present net income, and the facts tending to show a probable increase in the future or otherwise, it would be comparatively easy to approximate the present value of its plant and franchises. But it is not doing a private business. It is not a private corporation. The value of its property cannot be appraised as if it were a private corporation, doing a private business. *Cotting* v. *Kansas City Stock Yards Co.*, 82 Fed. Rep. 850. It is a quasi-public, or public service corporation. In pursuit of legitimate gain, it has devoted its property to a public use. In that way the public have acquired an interest in the use of the property. The company owes a duty to the public as well as to its stockholders.

It must serve the public faithfully and impartially, and must charge no more than reasonable rates for service. *Brunswick Gas Light Co. v. United Gas Fuel & Light Co.,* 85 Maine, 532, 35 Am. St. Rep. 385. The Legislature may limit the tolls of such a corporation so that they shall be reasonable. *Munn* v. *Illinois,* 94 U. S. 113; *Smyth* v. *Ames,* 169 U. S. 466. Unreasonable charges may be reached by the restraining hand of the court. Thus far the parties agree. And it may be said that the fair and equitable value of the system of the Maine Water Company, as a whole, may in a large sense be measured by its net income at reasonable rates, taking into account future probabilities. But the plaintiff, request 4, asks us to say that "What would be reasonable rates can be determined only after and by means of a valuation of the companies' property," and that "the actual rates which may have been charged by the companies, and their actual earnings, have no bearing on the value either of the companies' plant or property, or of their franchises, and are immaterial." On the other hand, the defendants state their proposition in these words, request 11, "That the value of a franchise depends on its productiveness or net earning power, present and prospective, developed or capable of development, within the entire territory embraced by the taking; that whenever net earning power, or net incomes and revenues is to be determined under this Act, it is to be so determined under reasonable water rates, after due allowance for operating expense, and maintenance or depreciation."

Waiving other questions for the time being, it will be seen that "reasonable water rates" lie at the foundation of this proposition. But so far we are not in any way aided in determining how they should be ascertained. The differing forms in which the parties have presented their requests upon this subject have given rise, in argument, to the question whether the reasonableness of the rates depends upon the value of the property, or whether the value of the property depends upon the income derived at reasonable rates. But the requests do not present the question in this form. The plaintiff asks that reasonable rates be made to depend upon the value of the property, and we think this is correct as far as it goes, as we shall have occasion to show hereafter. The defendants say that the value of the

franchise, that is, of the right to do the business, depends upon the net income at reasonable rates. And this is also correct as far as it goes. *Monongahela Navigation Co.* v. *U. S.* 148 U. S. 312. One refers to the value of the property in gross, the other to the value of the franchise. But the value of the property is not the only element to be considered in determining what are reasonable rates. As declared in *Smyth* y. *Ames,* 169 U. S. 466, the basis of all calculation as to the reasonableness of rates to be charged by a public service corporation is the fair value of the property used by it for the convenience of the public. Yet while the company is entitled, so far as this case shows, to a fair return upon the value of the property used for the public at the time it is being used, the public, that is, the customers, may demand that the rates shall be no higher than the services are worth to them, not in the aggregate, but as individuals. The value of the services in themselves is to be considered, and not exceeded. These views seem to be consonant with reason. They are also established by the highest judicial authority in our country.

In *Smyth* v. *Ames,* 169 U. S. 466, at p. 554, the court said, "Such a corporation was created for public purposes. It performs a function of the State. Its authority to exercise the right of eminent domain and to charge tolls was given primarily for the benefit of the public. It is under governmental control, though such control must be exercised with due regard to the constitutional guaranties for the protection of its property. It cannot, therefore, be admitted that a railroad corporation maintaining a highway under the authority of the State may fix its rates with a view solely to its own interests, and ignore the rights of the public. But the rights of the public would be ignored if rates for the transportation of persons or property on a railroad are exacted without reference to the *fair value of the property used* for the public, or the *fair value of the services rendered,* but in order simply that the corporation may meet operating expenses, pay the interest on its obligations, and declare a dividend to stockholders." Again, at p. 547, "What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to

demand is that no more be exacted for the use of a public highway than the services rendered by it are reasonably worth." Of course, the same principles apply to the water rates as to railroad rates. *San Diego Land & Town Co.* v. *National City*, 174 U. S. 739. In the case last cited, it was claimed by the appellant, as bearing upon just or reasonable rates for water service, that the court should take into consideration the cost, the cost per annum of operating the plant, including interest paid on money borrowed and reasonably necessary to be used in constructing the same, the annual depreciation of the plant from natural causes resulting from its use, and a fair net profit. The court said, at p. 757, "Undoubtedly, all these matters ought to be taken into consideration, and such weight be given them, when rates are being fixed, as under all the circumstances will be just to the company and to the public. The basis of calculation suggested by the appellant is, however, defective in not requiring *the real value of the property* and *the fair value in themselves of the services rendered* to be taken into consideration. What the company is entitled to demand, in order that it may have just compensation, is a fair return upon the reasonable value of the property at the time it is being used for the public."

In *Covington & Lexington Turnpike Road Co.* v. *Sanford*, 164 U. S. 578, it was held that the nature and value of the service rendered by a turnpike company bears upon the reasonableness of rates charged. And in the same case it was held that other considerations were involved, such as, "the reasonable cost of maintaining the road in good condition for public use, and the amount that may have been really and necessarily invested in the enterprise."

In *Cotting* v. *Kansas City Stock Yards Company*, 183 U. S. 79, decided since these proceedings were begun, Mr. Justice Brewer declared, p. 91, that the present value of the property is the basis by which the test of reasonableness is to be determined, although the actual cost is to be considered, and that the value of the services rendered to each individual is also to be considered.

In the same case, at p. 96, the case of *Canada Southern Railway Co.* v. *International Bridge Co.*, 8 App. Cases, 723, was cited with approval to the point that the question is not what profit it may be

reasonable for a company to make, but what it is reasonable to charge to the person who is charged. And Mr. Justice Brewer adds: "The question is always not what does he make as the aggregate of his profits, but what is the value of the services which he renders to the one seeking and receiving such services. Of course, it may sometimes be, as suggested in the opinion of Lord Chancellor Selborne, that the amount of the aggregate profits may be a factor in considering the question of the reasonableness of the charges, but it is only one factor, and it is not that which finally determines the question of reasonableness."

We deem the principles established by the Supreme Court of the United States as affecting the reasonableness of rates of public service corporations to be authoritative. The rates of such corporations are within the protection of the Fourteenth Amendment to the Federal Constitution. *Reagan* v. *Farmers Loan & Trust Co.*, 154 U. S. 362; *Covington & Lexington Turnpike Road Co.* v. *Sanford*, supra; *Smyth* v. *Ames*, supra; *San Diego Land Co.* v. *National City*, supra. And the declarations of the highest Federal Court thereon are of controlling force.

The elemental principles thus far noted may be summarized as, on the one hand, the right of the company to derive a fair income, based upon the fair value of the property at the time it is being used for the public, taking into account the cost of maintenance or depreciation, and current operating expenses; and, on the other hand, the right of the public to have no more exacted than the services in themselves are worth.

In some of the cases to which we have referred, it is suggested that there may be instances where these two principles will clash, where public service rendered at rates not higher than the service in itself is worth may produce less than a fair income, or no net income at all. But we assume that it is unnecessary to discuss this question here, for neither upon the face of the bill and answer, nor in the requests for instructions, nor in the arguments of counsel is there any suggestion that what will be reasonable rates for the public in this case will not also be reasonable rates for the company.

There is another matter which we think may fairly be considered in connection with the reasonableness of rates. We think something may be allowed in this respect for the risks of the original enterprise, if there were any. It is common sense that they who invest their money in hazardous enterprises may reasonably be entitled, for a time at least, to larger returns than would be the case if the success of the undertaking were assured from the beginning. The plaintiff, in request 11, concedes that such risks may be considered in valuing the franchise. But inasmuch as the value of the franchise depends chiefly upon the net income which may be produced by its exercise at reasonable rates, as has already been stated, it follows, we think, that the reasonableness of the rate may be affected by the degree of risk to which the original enterprise was naturally subjected. This does not mean unforeseen or emergent risks, but such as may have been justly contemplated by those who made the original investment. We use the word "chiefly," because we apprehend that a franchise, even of an unprofitable business, might have a temporary value for some purposes. But that condition does not seem to exist in this case. The element of risk, however, is not controlling. It is only one element. It is to be fairly considered in connection with the other elements named. To say just how much allowance should be made, and for how long a period, requires the exercise of a careful, conservative and discriminating judgment. If allowance be sought on account of this element of original risk, we think it will be permissible at the same time to inquire to what extent the company has already received income at rates in excess of what would otherwise be reasonable, and thus has already received compensation for this risk. This latter inquiry should be limited to this specific purpose, and is not open, as we shall hold, under plaintiff's request 13.

Thirdly, as to the character and duration of the franchises. It must be evident that the value of the plant and the franchises themselves, whether taken separately or as a whole, is affected by the character and duration of the franchises. *Bristol* v. *Bristol & W. Waterworks,* 19 R. I. 413, 34 Atl. Rep. 359, 32 L. R. A. 740; *Re Brooklyn,* 143 N. Y. 596, 26 L. R. A. 270. An exclusive franchise to do a profitable business is worth more than one which is not exclusive.

A perpetual franchise to do a profitable business is, or may be, worth more than one which is subject to repeal.

The plaintiff, request 9, asks an instruction that the franchises now held by the Maine Water Company are in no way exclusive. The defendants suggest that whether the franchises are exclusive or not is a question for the appraisers to answer after the charters have been put in evidence, and not for the court, in the first instance at least. We do not think so. Certain acts incorporating the Waterville Water Company and the Maine Water Company, and granting to them powers and franchises are referred to in the bill and are admitted by the answer. They are necessarily in the case without further proof. The plaintiff may properly ask for a construction of the franchises granted by those acts. Such construction is a matter of law.

We have not searched for other grants of franchises than those contained in plaintiff's requests 7 and 8. It is not our duty to do so. But we have no hesitation in saying that so far as the franchises granted by those acts are concerned, they are not exclusive. The Legislature may at any time, according to its own wisdom, grant to the municipalities within which this water system is situated franchises similar to the ones in question. It may grant similar franchises to one or more corporations like the Waterville Water Company or the Maine Water Company. *In re City of Brooklyn,* 143 N. Y. 596, 26 L. R. A. 270; *Long Island Water Supply Company* v. *Brooklyn,* 166 U. S. 685. It has granted similar franchises to this plaintiff, a municipal district, and has even authorized it to take away from the defendant water company all the franchises it holds within the district and Benton and Winslow. *Kennebec Water District* v. *Waterville,* 96 Maine, 234. But the defendants say that the Maine Water Company was "practically in the enjoyment of an exclusive franchise" because it had no competitor, although its franchise may not be legally an exclusive one, citing *Gloucester Water Co.* v. *Gloucester,* 179 Mass. 365. And we say that the fact that the company was doing its business without competition may and should be considered by the appraisers when they are valuing the property of the defendant as a going concern. That fact is one of the characteristics of the going business, and may enhance its value. We are considering now only

the legal situation of the company.    There is a difference between a franchise which is practically exclusive and one which is actually exclusive, as there is a difference between uncertainty and certainty. The distinction is vital in principle, and it may be important in fixing value.    Of how much or how little importance it is can only be estimated by the appraisers after hearing the evidence.

Again, the charters under which the company operates are subject to repeal by the Legislature.    R. S., c. 46, § 23.    The franchises are not perpetual and irrevocable.    It may be that it is extremely unlikely that the Legislature would repeal the charters, without providing for compensation in some way.    The probabilities are fairly open to consideration.    But the legal condition exists.    It is a factor to be considered for what it is worth.

Having considered these general propositions, which are far reaching and which affect substantially all of the requested instructions, it will now be comparatively easy to pass upon the several requests in the form in which they are presented.

### I.    PLAINTIFF'S REQUESTS.

The plaintiff, in request 2, asks that the actual cost of the plant and property together with proper allowances for depreciation be declared to be legal and competent evidence upon the question of the present value of the same.    We so hold.    It is competent evidence, but it is not conclusive.    It is not a controlling criterion of value, but it is evidence.    *National Water Works Co.* v. *Kansas City,* 62 Fed. Rep. 853, 27 L. R. A. 827; *Smyth* v. *Ames,* supra; *San Diego Land Co.* v. *National City,* supra; *Cotting* v. *Kansas City Stock Yards Co.,* supra; *West Chester Turnpike* v. *West Chester County,* 182 Pa. St. 40; *Griffin* v. *Goldsboro Water Co.,* 122 N. C. 206, 41 L. R. A. 240. Of course this element is subject to inquiry as to whether the works were built prudently, and whether they were built when prevailing prices were high, so that actual cost, in such respects, may exceed present value.    *Reagan* v. *Farmers Loan & Trust Co.,* 154 U. S. 362;    *San Diego Land & Town Co.* v. *National City,* 174 U. S. 739.

The remainder of plaintiff's request 2 asks that the companies be directed to produce their book accounts and other documentary evi-

dence bearing upon the question of cost before the appraisers. This request raises no question of law and cannot be considered by us.

Plaintiff's request 3 ought not to be given in the form in which it is presented, which is that "under no circumstances can the value of the plant of the companies be held to exceed the cost of producing at the present time a plant of equal capacity and modern design." Among other things, it leaves out of account the fact that it is the plant of a "going concern," and it seeks to substitute one of the elements of value for the measure of value itself. · *Montgomery County* v. *Bridge Company*, 110 Pa. St. 54. We shall discuss further the competency of the cost of reproduction when we consider defendants' requests 6 and 7.

We have already discussed sufficiently the first two propositions of plaintiff's request 4. The deduction sought to be established by the third proposition is that "the actual rates which may have been charged by the companies, and their actual earnings, have no bearing on the value either of the companies' plant or property or of their franchises and are immaterial." We cannot say this as a matter of law. As a matter of proof, we think the evidence of such facts is admissible and material. The value of the evidence, however, depends upon whether the appraisers shall find that the rates charged have been reasonable or not. · If reasonable, these facts furnish one important test, but not the only one, in fixing the present value of plant and franchises. *Monongahela Co.* v. *United States*, supra. But if the charges have been excessive, past receipts should not be regarded by the appraisers as a proper test of value. *Cotting* v. *Kansas City Stock Yards Co.*, 82 Fed. Rep. 850.

We omit plaintiff's request 5. In argument the counsel on both sides seem to agree that the selling price of the capital stock of the water company is not to be considered as affecting the valuation of the property. The plaintiff does so in part on general principles; the defendant, because of the special circumstances of this particular case; and it is immaterial to the present discussion which is right. If the claim of the defendants that the entire capital stock of the Waterville Water Company is owned by the Maine Water Company, and that the capital stock of the Maine Water Company represents

not only the property in the Waterville system, but also of many others in other towns and cities of the state, is found to be correct, certainly the selling price of capital stock will afford no aid in fixing the value of the Waterville system.

We think the appraisers should be instructed in accordance with plaintiff's requests 6 and 10, without any qualification. They ask that the quality of the water furnished and of the service rendered, and the fitness of the plant and of the source of water supply to meet reasonable requirements in the present and future, be deemed material upon the question of present value.

We have already discussed sufficiently plaintiff's requests 7 and 8, and to some extent its request 9. This last request is, that "the appraisers shall regard the franchises of the companies as entitling them to continue business as a going concern, but subject to all proper legal duties governing public service companies." So far we think the instruction should be given. *National Water Works Co.* v. *Kansas City,* 62 Fed. Rep. 853, 27 L. R. A. 827; *Newburyport Water Co.* v. *Newburyport,* 168 Mass. 541. The matter of exclusive franchise referred to in this request has already been disposed of. The remainder of the request is that "the franchise shall not be otherwise appraised or valued." In its present form, this is not approved. It is, to say the least, likely to be misleading. If it means to include all of the franchises of the companies, so far as they have been disclosed to us, it is unobjectionable. But if it is intended to include all franchises not now exercised by the going concern, or future extensions of the use of franchises now exercised, it is objectionable. The plaintiff will take all of the franchises of the companies, except the franchise to be a corporation, and for all of these franchises of which it will be deprived, the Maine Water Company will be entitled to just compensation.

Plaintiff's request 11, in so far as it says that "in fixing the value of the companies' franchises the appraisers may give such regard as is demanded by ample and fair public policy to the past investment, risks and services of the companies, and to the reasonably just expectations which those who made the investment had in mind when so investing," is approved. We have already discussed this proposition

in a former part of this opinion, relating to reasonable rates, to which we think it properly relates.

The remainder of request 11 is not approved. It is that in fixing the value of the companies' franchises the appraisers may give regard "to the faithfulness or unfaithfulness shown by the companies in the performance of their public duty and obligation to furnish pure water at reasonable rates." We do not think that past faithfulness or unfaithfulness in the exercise of a franchise bears any such relation to the present value of it as to make it a proper matter for consideration. It is the franchise as it now exists which is to be taken and paid for. It is the right to do business now, under and within the charter, which must be appraised, irrespective of the past use of that right. If past misconduct has incidentally resulted in lessened business, that matter will have due consideration under other heads. But in this process of condemnation of property, the owner is not to be punished for past misuse of it.

Requests 12 and 13 may be considered together. They seem to imply that the companies in the past have been unfaithful in the performance of their public duties, both by furnishing impure water and by charging excessive rates, and by reason thereof, it is claimed that the companies "have rendered themselves liable to such processes as are appropriate to work legal forfeiture" of their rights and franchises, and that this liability to forfeiture is to be considered in fixing the value of the property. We cannot give our assent to this doctrine. If these franchises have become forfeitable for misbehavior of the companies, the remedy is found in quo warranto brought by the State, and only by the State. Any individual, affected by the wrongful conduct of the companies, might have invoked the intervention of the State. But this does not seem to have been done. On the contrary, it is proposed to take these franchises as they are. Even if forfeitable, they have not been forfeited. They are in full force and vigor. They must be valued as living franchises, not as dead or moribund. Whether the State would ever institute process for forfeiture, and if it did, whether the court would find the facts as the appraisers might, are questions so very uncertain, that an inquiry concerning them must be purely speculative and unfruitful. To

permit this inquiry would be to permit the appraisers to speculate upon what the judgment of the court might be at another trial, under other conditions.   We think the franchises must be appraised as they are now held and used by the companies.   Whatever the past misconduct may have been, we do not see how it can affect the value of the present right and ability to exercise the franchises.   We think, however, that this liability to forfeiture arising from misconduct is to be distinguished from liability to legislative repeal to which we have already alluded.   The latter is a limitation of the franchise which inheres in the franchise itself, from its creation.   There is no franchise, except as so limited.   It is the only kind of a franchise the companies ever held.

Plaintiff's request 13 asks that if it be found that the companies have actually received more than reasonable rates for the services rendered since operations began, then the amount of such excess shall be deducted from the amount to which the companies would otherwise be entitled.   It is not approved.   It is sufficient to say that this is not a process of accounting, but one of condemnation of property, for which the owner is entitled by statute and Constitution to just compensation at its present value, without any deduction.

II.                     DEFENDANTS' REQUESTS.

The first paragraph of the defendants' requests presents no question of law, and the second request has already been considered.

Their request 3 is "that any increase of pecuniary obligation or burden or duty, or any damage to, or impairment of the value of its remaining property or franchises, in any way resulting to said Maine Water Company by reason of the exercise of the right of eminent domain contemplated by said act of 1899, should be considered by said appraisers and just compensation therefor should be included."   It seems to be assumed in argument, and we assume, that this request is based upon the fact that the Maine Water Company is the owner of other water systems situated at other places.   Of course it cannot refer to any remaining property at Waterville, for there will be none. The argument is that by depriving the company of its Waterville plant, the general expense of supervision and management will still

remain practically unchanged, and will be a proportionately heavier burden upon the remaining property. The language of counsel is that "the economy and efficiency of administration which are sought and obtained by the combination are inevitably more or less impaired by breaking it up, either in whole or in part." The compensation asked is not for property taken, but for incidental damages to other property having no physical connection with, or contiguity to, that taken, and having no relations whatsoever with the property taken except those which grow out of common ownership. The defendants rest their claim upon the familiar doctrine of damages for severance, namely, that when a portion of a property is taken, the impaired value of the remainder, by reason of the severance, may and should be considered, and compensation awarded therefor. But we think this case cannot be brought within that rule. That rule applies only when the property taken and the property left may fairly be considered one property, and not when they are separate and distinct. In *Bangor & Piscataquis R. R. Co.* v. *McComb*, 60 Maine, 290, KENT, J., after stating the reasons for allowance of damages for severance, uses this language:—"The constitutional provision cannot be carried out, in its letter and spirit, by anything short of a just compensation for all the direct damages to the owner of the lot, *confined to that lot*, occasioned by the taking of his land. The paramount law intends that such owner, *so far as that lot is in question*, shall be put in as good a condition, pecuniarily, by a just compensation, as he would have been in if *that lot of land* had remained entire, as his own property. How much less is *that lot* . . . worth . . . than the whole lot intact was the day before such taking?" The implication of this language clearly is that the parcels must be of the same property, in that case, the same lot. In 10 Am. & Eng. Ency. of Law (2d ed.) p. 1166, Tit., Eminent Domain, it is said that "to entitle an owner to recover damages to the whole tract when a part of his lands have been taken, there must have been a unity of contiguous parcels. The land must have been together; all of it must have been used as a single tract.". In 3 Sedgwick on Damages, 8th ed., at p. 413, the rule is laid down that "in assessing damages or benefits, the inquiry is limited to the tract of land immediately affected. This is held to be so

much as belongs to the proprietor whose land is taken, and is continuous with it, and used together for a common purpose. . . . . When land is divided into blocks by the owner, and dealt with as such by himself and purchasers, it is held that each block is to be considered as a separate tract in assessing damages." *Laflin* v. *Chicago, etc., Ry.*, 33 Fed. Rep. 415. Nor are the two cases, which the learned counsel for the defendants say are the only ones found in which the question of damages for the dismemberment of a public service corporation by a compulsory taking has been raised, opposed to this doctrine. In *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312, the general government was proceeding to condemn under the power of eminent domain, one of the seven locks and dams owned by the Navigation Company. The court, calling attention to the doctrine of damages by severance, said, "This is a question which may arise possibly in this case, if the seven locks and dams belonging to the Navigation Company *are so situated as to be fairly considered one property*, a matter in which the record before us furnishes no positive evidence. It seems to be assumed that each lock and dam by itself constitutes a separate structure and separate property, and the thoughts we have suggested are pertinent to such a case." The other case so cited and referred to by counsel is *U. S.* v. *Gettysburg Electric Ry. Co.*, 160 U. S. 668. But this case seems rather to be within the rule of the "single tract" cases. The court simply says: "If the part taken by the government is essential to enable the railroad corporation to perform its functions, or if the value of the remaining property is impaired, such facts might enter into the question of the amount of the compensation to be awarded." It was alleged by the company that the effect of the condemnation of the strip of land in question would be to cut off a particular branch railway or extension belonging to it, and destroy its continuity and prevent its construction. It seems to us clear that the several parts of an electric railway system may properly be regarded as a single property. No other authority cited by the defendants upon this point aids them. The damages occasioned to the company by the taking of the Waterville property, considered with respect to its other and distinct property, if any, will be incidental and consequential. And

such damages are not within the statutory and constitutional require-
ments of "just compensation."    *Cushman* v. *Smith*, 34 Maine, 247;
*Brooks* v. *Cedar Brook Imp., etc., Co.*, 82 Maine, 17, 17 Am. St.
St. Rep. 459, 7 L. R. A. 460.

The defendants' request 4 should be given.    It relates to property
not directly connected with the water system or plant.    It should be
appraised "at its fair market value, not at a forced sale, but at what
it is fairly worth to the seller, under conditions permitting a prudent
and beneficial sale."    *Chase* v. *Portland*, 86 Maine, 367; *Somerville
R. R. Co.* v. *Doughty*, 22 N. J. L. 495; 10 Am. & Eng. Ency. of
Law, 2nd ed., 1152; *Monongahela Navigation Co.* v. *United States*,
supra; *Montgomery County* v. *Bridge Co.*, supra; *West Chester Turn-
pike* v. *West Chester Co.* 182 Pa. St. 40.    In *Chase* v. *Portland*, our
own court quoted with approval from *Lawrence* v. *Boston*, 119 Mass.
126, the following: "Market value means the fair value of the prop-
erty as between one who wants to purchase and one who wants to sell
any article; not what could be obtained for it under peculiar circum-
stances, when a greater than its fair price could be obtained; not its
speculative value; not value obtained from the necessities of another.
It is what it would bring at a fair public sale, when one party wanted
to sell and the other to buy."    *Palmer* v. *Penobscot Lumbering Asso-
ciation*, 90 Maine, 193.    The statute provides for fixing the "just
compensation" for the property taken at its fair and equitable value,
but it does not provide for compensation for consequential damages,

Defendants' request 5 has already been discussed.    It should not
be given except as already qualified.    We hold that the construction
cost is admissible, but not controlling, on the question of present
value.    It must be borne in mind, as said by Mr. Justice Brewer in
*National Water Works Co.* v. *Kansas City*, supra, that "original cost
and present value are not equivalent terms," and that besides the ele-
ments of wear and tear, and depreciation in physical structure or in
value, the property may have cost more than it ought to have cost.
*San Diego Land Co.* v. *National City*, supra.

Defendants' requests 6 and 7, as limited in their brief, are that
neither the reproduction cost of the existing plant, nor the cost at
present of a new one differently constructed, but equal or even

superior in efficiency to the one now existing, is the legal criterion of the total values to be awarded, or even of the plant or structure value. This is undoubtedly true, if by "criterion" is meant a sole or controlling test of present value. There are other elements besides cost of reproduction or replacement which affect present value. The present value of the property is of vital importance, for, as we have seen, the value of the property at the time it is being used for the public is one of the elements essential in determining what are then reasonable rates, and question of franchise value depends upon the rates which may reasonably be charged. *San Diego Land Co.* v. *National City,* supra. We think it will be proper for the appraisers to consider what the existing system can be reproduced or replaced for, because evidence of cost of reproduction will have some tendency to show what is the present value. Such cost will not, however, be conclusive. There are other elements still to be noticed, which should be considered in fixing present value. In *Newburyport Water Co.* v. *Newburyport,* the cost of the reproduction of all of that part of the physical plant used in pumping and delivering water, less any depreciation, was considered without objection, and seems to have been approved by the court. *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365; *Smyth* v. *Ames,* supra. But the mere cost of reproduction is not enough. Judge Brewer, in *National Water Works* v. *Kansas City,* supra, calls attention to two additional elements, one, that it is a completed structure connected with buildings prepared for use, and the other, that the company is a going concern. He says, p. 865, "Nor would the mere cost of reproducing the water works plant be a fair test, because that does not take into account the value which flows from the established connections between the pipes and the buildings of the city. It is obvious that the mere cost of purchasing the land, constructing the buildings, putting in the machinery, and laying the pipes in the streets—in other words the cost of reproduction—does not give the value of the property as it is to-day. A completed system of water works, such as the company has, without a single connection between the pipes in the streets and the buildings of the city, would be a property of much less value than that system connected, as it is,. with so many buildings, and earning in consequence

thereof the money which it does earn.    The fact that it is a system in operation, not only with a capacity to supply the city, but actually supplying many buildings in the city—not only with a capacity to earn, but actually earning—makes it true that the 'fair and equitable value' is something in excess of the cost of reproduction."

The court, in *San Diego Water Co.* v. *San Diego*, 118 Cal. 556, 62 Am. St. Rep. 261, 38-L. R. A. 460, holds that the method of fixing present value by ascertaining cost of replacement is not applicable to property of this character, because, chiefly, the construction and development of water works is a matter of growth.    At the outset the company owning them is a pioneer.    It must keep pace with or anticipate municipal growth.    The works must be constructed, and usually no reward can be realized by the constructors until some time has elapsed.    In the meantime, as the city grows, the facilities of building such works are increased, and the cost of construction thereby diminished.    But we think that, at the most, these considerations suggest only that other elements are also taken into account in fixing present value.    So far as they relate to the original hazard, we have discussed them in an earlier part of this opinion.    We think the inquiry along the line of reproduction should, however, be limited to the replacing of the present system by one substantially like it. To enter upon a comparison of the merits of different systems, to compare this one with more modern systems, would be to open a wide door to speculative inquiry, and lead to discussions not germane to the subject.    It is this system that is to be appraised, in its present condition and with its present efficiency.

Defendants' request 8 is in effect that in estimating even the structure-value of the plant, allowance should be made, in addition to the value as otherwise established, for the fact, if proved, that the water system is a going concern, with a profitable business and good-will already established, and with a present income assured and now being earned.    We think this instruction, with a modification to be noted, should be given.    *Newburyport Water Co.* v. *Newburyport,* supra; *National Water Works Co.* v. *Kansas City,* supra; *Gloucester Water Supply Co.* v. *Gloucester* supra; *Bristol* v. *Water Works,* 19 R. I. 413, 49 At. Rep. 974.    But the term "good-will" may be mislead-

ing.    Lord Eldon said that good-will is nothing more than the prob-
ability that the old customers will resort to the old place.    *Crutwell*
v. *Lye*, 17 Ves. Jr. 335.    See *Flagg Mfg. Co.* v. *Holway*, 178 Mass.
83.    Under any possible definition it involves an element of personal
choice.    This phrase is inappropriate where there can be no choice.
So far as the defendants' system is "practically exclusive," the ele-
ment of "good-will" should not be considered.    *Bristol* v. *Water
Works*, supra.

The defendants, in request 9, ask that in determining the amount
to be added to structure-value, in consideration of the fact that the
system is a going concern, the appraisers should consider, among other
things, the present efficiency of the system, the length of time neces-
sary to construct the same de novo, the time and cost needed after con-
struction to develop such new system to the level of the present one
in respect to business and income, and the added net incomes and
profits, if any, which, by its acquirement as such going concern,
would accrue to a purchaser during the time required for such new
construction, and for such development of business and income.    We
think this instruction should be given.    These are all proper matters
for consideration "among other things."    They are not controlling.
Their weight and value depend upon the varying circumstances of
each particular case.    Of course a plant, as such, already equipped
for business, is worth more, if the business be a profitable one, than
the mere cost of construction.

The defendants' request 10 should also be given.    It asks, in effect,
that in addition to structure-values already considered, the appraisers
should consider all the franchises, rights, and privileges now held by
the Maine Water Company within the Kennebec Water District and
Benton and Winslow, and allow just compensation for them as such.
This valuation, however, must be made with reference to the character
and duration of the franchises.    So far as appears, they are not exclu-
sive, and they are subject to repeal.    This we have already discussed.
A franchise is property and it has value.    In this case the franchises
have value in themselves, inasmuch as they give the owner the privi-
lege of doing what is called a profitable business.    We have already
shown that the existence of such franchises may also enhance the

value of the plant by which they are exercised  It should be remembered, however, that a franchise has only one appraisable value, and care should be taken that that value is appraised only once.

The defendants' request 11 should be given in this case.  It has been given in part already.  It is that the value of a franchise depends upon its net earning power, present and prospective, developed and capable of development, at reasonable rates, that the value to be assessed is the value to the seller and not to the buyer, and that "just compensation" means full compensation for everything or element of value taken.  *Monongahela Nav. Co.* v. *United States,* supra.  The appraisal must be made having in mind what we have already said concerning the character and duration of the franchises and the reasonableness of rates.  While with these limitations, the owner is entitled to receive the value of the franchises, having reference to their prospective use as now developed, and to the future development of their use, consideration must also be had of the fact that further investment may be necessary to develop the use, and of the further fact that at any stage of development the owner of the franchise will be entitled to charge only reasonable rates under the conditions then existing. But, subject to such limitations, we think it should be said that the owner is entitled to any appreciation due to natural causes, such as, for instance, the growth of the cities or towns in which the plant is situated.  *Cotting* v. *Kansas City Stock Yards Co.*, 82 Fed. Rep. 850.

Defendants' request 12, "that the fact that the franchises, rights and privileges of said Maine Water Company are to be taken under this Act in no respect destroys or impairs their value to said Water Company, and cannot diminish or affect the amount to be awarded as just compensation therefor," is approved, and the instruction should be given.

Subject to the suggestions we have made under defendants' request 11, their request 13 is approved, and the instruction should be given. It is as follows:—"That in estimating said franchises, and the present and future net earning power included therein, the appraisers should duly weigh the nature and extent of these franchises, rights and privileges, whether the same are perpetual or otherwise; also, so far as proved, the rights of the Maine Water Company under all

existing contracts and the value thereof; the extent of existing business and of the net incomes or revenues now derived or derivable therefrom, the existing demand for new and additional services, and for the development and increase of said business, incomes and revenues, the past, and probable future, growth or decay of the territory now served, or capable of being served under said franchises, in population, in wealth, and in needs and uses for water to be supplied by some water system, and the past, and probable future, increase or decrease in said net incomes and revenues as affected by these or other surrounding conditions; also the fact that by said taking said Water Company will be wholly and forever deprived of all said franchises, rights, privileges, earning power, incomes and revenues, and that it is the duty of said appraisers to make, in their sound judgment, just and full compensation to said Water Company for all the same."

Defendants' request 14, is as follows:—"That the true measure of value, under the terms of this Act, and under the requirements of the Constitutions of this State and of the United States, is just and full compensation to said Water Company for each and everything of value of which it is to be deprived by this taking; that in addition to the special property covered by request 4, the plant, property, franchises, rights and privileges now held by said Water Company within the territory embraced by this Act, contain distinct elements of value, first, as an asset, and, second, as a source of income, having, or not, present and prospective net earning power; that by the taking under this Act said Water Company will be deprived wholly and forever, both of said asset, and of said source of income; that just compensation to said Company for what is thus compulsorily taken from it requires that the sum to be awarded as a substitute therefor shall be the full equivalent of everything taken, both in value as an asset, and in net earning power, and such a sum as, in the sound judgment of the appraisers, will be the full money equivalent of all the plant, property, franchises, rights and privileges aforesaid, and, at the same time, if prudently invested at fair current rates of interest, will yield to said Company the same net incomes and revenues, and for the same term, that it will be deprived of by this taking; the net earning power, incomes and revenues aforesaid to be determined under reason-

able water rates, after due allowance on the one hand for operating expense and maintenance or depreciation, and, on the other hand, with due regard to the probable future increase or decrease thereof under all conditions affecting the same."

Some portions of this request have already been considered so fully that it is unnecessary to repeat. It is doubtless true that the property to be taken, both plant and franchises, are to be appraised, having in view their value as property in itself and their value as a source of income. The physical property has value irrespective of the franchise, and the franchise without reference to the physical property. But these two kinds of value practically shade into each other. The value of the physical property is enhanced by the existence of franchises which make it usable. The value of franchises is enhanced by the existence of physical property by which they may be profitably exercised. There are these items of property, but only one entire system. There are all of these elements of value, from which is to be estimated the value of the entire property, tangible and intangible, as a whole. The plaintiff is not to take the physical property without the franchises, nor the franchises without the physical property. It will pay one gross sum as an entire value, and take all the property. The consideration of the elements will be useful only as it will enable the appraisers to fix the just compensation to be paid for the entire property as a whole.

But we cannot assent to the proposition that the capitalization of income even at reasonable rates can be adopted as a sufficient or satisfactory test of present value. Such a capitalization would fix at the present time a specific value which would continue for all time to come, as a fixed and unvarying source of income, no matter how conditions may be changed.

Our attention has been called to no case resting on the same principles as this one does, where the capitalization of profits has been adopted as the test of present value, certainly not in this country. Take for instance, the case of *Edinburgh Street Tramway Co.* v. *Lord Provost,* Appeal Cases, 1894, p. 456, cited by defendants. It does not support the doctrine. In that case the arbitrator declined to value the tramway lines by capitalizing the rental, and upon appeal,

his assessment was affirmed and the appeal dismissed. It was held that the statute under which the proceedings were had limited the appraisal to construction value, which the arbitrator had considered in the light of the fact that the tramways were then successfully constructed and in complete working condition; in other words, that the company was a going concern. Lord Watson, in the same case, at p. 475, said that valuation by rental "is not a satisfactory method in the case of a tramway line which has never been let, and has no competing line within its district." How much importance is attributed to the last suggestion is not stated. See *National Water Works Co.* v. *Kansas City,* 62 Fed. Rep. 853, supra; *Newburyport Water Co.* v. *Newburyport,* 168 Mass. 541. If the franchises were exclusive, if they were perpetual, and if it could be known that what are reasonable rates now would continue to be reasonable, there would be more ground for sustaining such a test. But the franchises are not exclusive, competition is possible, even, as the event has shown, more than probable. They are not perpetual, but may be repealed. And what may be reasonable rates at any given time will depend upon conditions which not only may vary, but are likely to vary. Therefore the basis for capitalization is too uncertain to afford a satisfactory test of value. By this, we do not mean to say that, while not a test, present and probable future earnings at reasonable rates are not properly to be considered in determining value. We have already stated that they are.

Defendants request 15 raises no new question of law. It is sufficient to say the Constitution of the United States requires that just compensation should be made to said Water Company for all its property of every nature taken under the Act in question at its full value, not to the taker, but to the seller.

To conclude. The appraisers should be instructed to receive and consider all evidence offered, so far as admissible under the general rules of law, which is pertinent under the rules stated in these requests, so far as they have been approved by this court, and as limited or explained in this opinion.

*So ordered.*