## WICHITA WATER CO. v. CITY OF WICHITA.

(District Court, D. Kansas, Second Division. February 5, 1921.)

No. 104–N.

1. **Equity ☞409—Finding of special master on conflicting evidence not set aside, except for cogent reasons.**

Courts are slow to set aside findings of fact made by a special master on conflicting testimony, except for very cogent reasons.

2. **Waters and water courses ☞183(5)—Proper method of ascertaining market value of water system purchased by city stated.**

Where a city, electing to purchase a waterworks system under a contract with the water company, is bound to pay the fair market value of the system as a going system, the replacement or reproduction method of ascertaining such fair and reasonable market value is proper, when a fair and reasonable amount for the going value is added, and there is deducted such reasonable sum as will fairly and justly measure the difference in value between a new plant so reproduced and the depreciated value of the old plant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Waters and water courses** ⬅183(5)—**In computing cost of replacing system purchased by city, cost of cutting and replacing pavement improperly excluded.**

Where a city, electing to purchase a waterworks system under a contract with the water company, was required to pay the fair market value of the system as a going system, it was error to exclude, in computing the replacement cost, the cost of cutting and replacing pavements over the water mains, though the pavement was laid by the city since the water mains were laid by the company.

In Equity. Suit by the Wichita Water Company against the City of Wichita. On exceptions to the report of a special master. Exceptions sustained in part, and case re-referred to the master, with directions.

W. R. Voorhis, of New York City, and David Smyth and Vermilion, Evans, Carey & Lilleston, all of Wichita, Kan., for plaintiff.

Robert C. Foulston, of Wichita, Kan., for defendant.

POLLOCK, District Judge. It having been heretofore determined the city had elected to purchase the waterworks system built and owned by plaintiff in said city under the provisions of the ordinance contract between the parties, it became necessary to determine the purchase price which in equity and good conscience complainant should receive and the city pay. Hence, for the purpose of ascertaining this amount as of date December 1, 1917, Hon. John S. Dean was appointed special master. The order of appointment, regarding the ascertainment of value, reads as follows:

"It is further ordered that John S. Dean be and he is hereby appointed special master, to take and hear the proof as to the fair market value of the system of waterworks described in the bill of complaint, situate in the city of Wichita, Kansas, regarded as a going waterworks system, employed for the purpose of furnishing said city and its inhabitants with water, as of date December 1, 1917, and of the amounts expended by the plaintiff in the operation of said waterworks system since the date of purchase by the city, including amounts paid for taxes, extensions, repairs, and betterments, and the amounts received by the plaintiff in the operation of said plant, and the amounts due from the defendant on account of the purchase of said property, and all matters connected therewith, including any sums due for hydrant rentals. And the said special master shall take said proofs and make his return to this court, and file his findings of fact thereon in the office of the clerk of this court, on or before the 20th day of September, 1919."

In pursuance of this order the special master proceeded to take the voluminous proofs offered by the respective parties, to a consideration of the same, to hear arguments of solicitors for the respective parties, and to the making of an exhaustive report on the same. On the coming in of this report many exceptions thereto were taken by both parties, and said exceptions have now been submitted on printed abstracts of the record, briefs, and arguments of solicitors, and come now on for determination.

It is found by the special master the fair and reasonable market value of all the property of complainant, as of date December 1, 1917, was the sum of $1,600,000. On behalf of the Water Company it is urged

this sum is far below the market value of the property as of the day named, and by the defendant city that the same is largely in excess of the true price and sum the city should be compelled to pay.

[1] I have read and considered the report of the special master, and the reasons given by him for the ultimate conclusion reached, and have read the exceptions taken thereto, and the briefs and arguments of solicitors thereon. In determining a matter of this character it is well for courts to bear in mind the master, who hears the evidence and has the witnesses present before him, has a better means of judging of their credibility and of the true worth of their testimony than a reviewing court can possibly obtain from a cold record of the proceedings. Hence it comes about, as to questions of fact found on conflicting testimony by a special master, courts are slow to set aside except for very cogent reasons. The question of merit presented by the exceptions taken generally is: Did the master, in making his estimate as to the true value of the property, proceed along those well-beaten paths trod out by the authorities? If so, did the master fairly determine the true reasonable market value of the property as of the date named?

As I understand the report of the master, he proceeded to inquire what sum of money it would have taken to replace the property of the complainant, which the city is to purchase, on the date to which the inquiry relates, December 1, 1917, including therein an item of $150,-000 as the value of an established going concern; that the replacement value was ascertained by the master to be $2,157,781, spot cash. From this sum he deducted for depreciation, occasioned by long use, wear and tear, corrosion, crystallization of materials, etc., an amount not stated, and to this sum added what it would have cost the city in the building of a new plant to have cut paving and macadam work, with depreciation thereto added, making a total of both these items, $616,354.75, and placed his judgment as to the true market value of the property on the day named at $1,600,000, in round numbers.

[2] There can be no doubt whatever but that the replacement or reproduction method of ascertaining the fair and reasonable market value of a public utility property, such as is involved in this case, is the established method employed in the making of such ascertainments, if, as was done by the master in this case, a fair and reasonable amount for its going value be added, and, having thus determined the replacement value from such aggregate sum, there is deducted such reasonable sum or sums as will fairly and justly measure the difference in value between the new plant so reproduced, with new materials used in the reconstruction, and the depreciation in value of the old plant, occasioned by long use, erosion, corrosion, and electrolysis of the mains, obsolescence, and, in short, all and everything which tends to lessen the life of the plant or depreciate the value of the old as compared with the cost of the newly constructed system. Denver Union Water Co. v. City and County of Denver et al., 246 U. S. 178, 38 Sup. Ct. 278, 62 L. Ed. 649; Des Moines Gas Co. v. Des Moines, 238 U. S. 153, 35 Sup. Ct. 811, 59 L. Ed. 1244; City of Omaha v. Omaha Water Co., 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991, 48 L. R. A. (N. S.) 1084; City of Knoxville v. Knoxville Water Co., 212 U. S.

1, 29 Sup. Ct. 148, 53 L. Ed. 371; Minnesota Rate Cases (C. C.) 184
Fed. 765.

[3] In my judgment, from an examination of the record in this
case, the master did, in accordance with this established rule, proceed
to find the replacement value of the property involved in this controver-
sy, including therein a reasonable sum for its going value as a business
concern, and the amount so found and stated is well within the proofs,
and is a fair, equitable, and just value as of the date to which the in-
quiry relates, December 1, 1917, considering, as must be done in such
estimation, the then cost of labor, materials, and all other things re-
quired in the doing of the work of replacing the system. However,
the question of merit raised on the exceptions is: Did the special mas-
ter proceed in the making of deductions from the replacement cost as
by him ascertained and stated, in accordance with the established prac-
tice in such cases, as shown by his report? In this respect the report
reads:

"I have also included the cost of cutting and replacing pavements existing
over mains on December 1, 1917, since, in the construction of a new plant in
the location of the old one, it would be necessary to cut and replace all
pavements over existing mains, as now located. It does not follow, however,
that the cost of cutting and replacing pavements over existing mains consti-
tutes an item to be considered in arriving at the market value of the prop-
erty. The fact that it would be necessary to incur this expense in the con-
struction of a new plant does not add to the value of the property as it now
exists. The earning capacity of the plant is not enhanced by the fact that
the city has seen fit to construct pavements over the mains, since their in-
stallation by the plaintiff. This I understand to be the view of the Supreme
Court of the United States, as expressed in the case of Des Moines Gas
Company v. Des Moines, 238 U. S. 153. The valuation in that case was for
rate-making purposes, but I think the rule has equal application in sales cases."

Now, while it is true, in the case of Des Moines Gas Co. v. Des
Moines, supra, the Supreme Court did exclude from the replacement
value of the plant involved in that case the cost of placing mains,
pipes, etc., underneath the paving and macadam work of the city, yet
the question in that case was one of just rates of service to be charg-
ed the consumers of gas, and was not one as to the fair market value
of the plant involved therein, based on its replacement theory. To
have replaced or reconstructed the system of waterworks involved in
this controversy in the city of Wichita on the date mentioned would
have required the cutting and restoring of a large amount of paving
concrete, asphalt and other solid materials. To have done this would
have taken much labor and at an expenditure of a large amount of
money. Why, then, must not this increased cost of reproduction be
computed in the cost of replacement? Any method or system of rea-
soning employed in mathematical calculations or computations, if
sound in principle, must hold good in its last analysis and ultimate
conclusion. If not, it is unsound in principle and should not be
adopted.

To my mind, the fact the city had done this paving, macadamizing,
etc., since the water mains were laid by the water company, would be
no ground for excluding this item from the computation. If the city
were doing the work of replacement, it would be required to do pre-

cisely the same amount of cutting and restoring the paving, macadam, etc., as would a private company. Suppose by some freak of nature the soft loam soil through which the pipes of the Wichita waterworks system were laid had hardened, since they were laid, into granite rock. The value of the water furnished through the mains to the consumer might not for this reason be thus increased; but the value of the plant based on any theory of reproduction or replacement must have been thereby increased, for, in order to replace or reproduce, it would have required the expenditure of a large amount of money in cutting and blasting the granite.

It follows that the exceptions taken to the report of the special master in excluding this item of replacement must be sustained. As the precise amount of this cost of replacing the system of waterworks in dispute as of the named date cannot be ascertained from the master's report on file in the case, the case will be re-referred to the master with directions:

(1) To ascertain and state from the proofs the fair and just market value of the complainant's property as of December 1, 1917, based upon the reproduction or replacement cost as of said date, including the cost of cutting and replacing of such paving, macadam, and other like work as would be required to be done on said date to have reconstructed the system; (2) to ascertain from the proofs and state what fair and reasonable sums should be deducted from the replacement value so ascertained for depreciation in the value of the old plant, taking into consideration, in so doing, the age of the present plant, the kind, quality, nature, and condition of the materials therein, and all and every other thing and element that impairs its use in the rendering of adequate service for which it was designed and used, or which tends to lessen the life of the plant, or in any manner impairs or lessens its true, fair market value on the date named. The difference between the replacement cost of the system so ascertained, and the amount of depreciation in value so determined, should, to my mind, be the fair market value of the plant on the day it is found the city elected to take it over.

To this extent the exceptions taken are sustained. In all other respects they are overruled and denied, and the matter is re-referred to the special master for a further finding in accordance with the conclusions here reached.