415 P.2d 872

**CITY OF TUCSON, a municipal corporation,**
Appellant,

**v.**

**EL RIO WATER COMPANY, a corporation,**
Appellee.

No. 8501.

Supreme Court of Arizona,
In Banc.
June 22, 1966.

50

Calvin Webster, City Atty., Joe R. Purcell, Asst. City Atty., Tucson, Dow Ben Roush, Allen L. Feinstein, Phoenix, of counsel, for appellant.

Boyle, Bilby, Thompson & Shoenhair, Tucson, for appellee.

STRUCKMEYER, Chief Justice.

This appeal is by the City of Tucson from a judgment in condemnation awarding the El Rio Water Company, a corporation, the sum of $271,000 as the value of its utility properties. The single issue raised by the City is the propriety of the award insofar as it relates to the going concern value of the utility.

By the Constitution of Arizona, Art. 2, § 17, A.R.S., "just compensation" must be paid for property appropriated; and by statute, subsec. B of A.R.S. § 9–518 (Laws, 1962), the court or jury "shall include the fair and equitable value of [the] plant and property, including its value as a going concern, * * *."

The action was tried without a jury to the court which found, *inter alia:*

"From the evidence introduced, the Court finds that the fair and equitable value of said utility property, including its plant, system, and business and its value as a going concern, is, as of the 5th day of November, 1963, the sum of $271,000." (Finding of Fact No. 10)

The City asserts that the trial court arrived at valuation by determining the value of the physical plant and property to be $120,000 (reconstruction cost new as $200,-000, less depreciation of forty per cent)

and hence, by necessary implication, going concern value as $151,000.[1] It is argued that going concern value is a limited concept meaning only the cost of putting the physical property of a public utility into operation and cases are cited which, by definition, limit going concern value to the exact cost of establishing the utility or, possibly, as modified by what ought to have been the reasonable cost.

■ We do not accept this as an appropriate statement under the Arizona statute. The legislature has provided that the compensation shall be fair and equitable and that the value of plant and property shall include an amount for going concern. If the court, as here, determines the present day value of the physical plant and properties of the utility on a reconstruction cost new less depreciation, it still must find the total amount which would justly compensate the condemnee for what the property would bring on the open market assuming a willing buyer and a willing seller.

■■ In City of Phoenix v. Consolidated Water Co., 101 Ariz. 43, 415 P.2d 866 (decided this date), we pointed out that Arizona has consistently adhered to the test in condemnation actions as the market value of the property taken to be determined by what a willing buyer would pay and a willing seller would accept. We also said that, where there are no comparable sales on which to predicate an opinion as to market value of property, resort must be had to other means of fixing market value. We held that while capitalized earnings should not be considered as the controlling factor in arriving at a fair value in eminent domain proceedings, still, this does not mean that earnings are to be wholly disregarded. In the instant case, these statements must be examined and applied in light of the particular facts.

The testimony for El Rio through its expert consultant engineer established that after taking into consideration all reasonable anticipated expenses the future net income of this water company could be said to be $23,000 per year, that it would take the sum of $329,000 earning seven per cent to produce an income of $23,000. The testimony of the same expert was to the effect that the City in operating this utility could, within twenty years, pay for the El Rio system out of earnings and at the same time have an adequate amount for operations and replacements so that the system would be in as good a condition as at the beginning of the period.

■ It is settled that the franchise of a public service corporation is property for which compensation must be paid.

"There is much of logic in the contention of the United States that, since the defendants here perform public services similar to those performed by the City in the other case, the award to them should likewise be only the cost of providing the necessary facilities elsewhere in the light of the change made by the taking. But the analogy is not complete, for, unlike a municipality, the defendants do also serve their stockholders. In short they operate a business, albeit a public

1. The court's Finding of Fact No. 8:
 "The Court in arriving at its value in this matter has taken evaluation based upon the reconstruction costs new, less depreciation, plus an added value of going concern. In arriving at a reconstruction cost new basis the Court accepted figures advanced by both parties and did not entirely accept the value of either of the parties and arrived at a figure of approximately $200,000. The depreciation is based upon a figure arrived at by the Court based upon a review of the entire evidence in this regard leaning perhaps more but not entirely upon the observed depreciation and the remaining probable life of the system; it adopted a depreciation overall of approximately 40% of the reconstruction cost new value. * * * In arriving at the fair and equitable value of all the property including its value as a going concern the Court took into consideration all of the evidence presented by both parties including that on comparable sales and capitalization of income but did not base its decision on any particular method."

service one, for profit. Moreover, the law seems to be too well settled for change now that the taking of a public franchise is the taking of property for which compensation must be paid. [Citation of cases]." United States v. Brooklyn Union Gas Co., 2 Cir., 168 F.2d 391, 394.

■ While there is no evidence that El Rio had a franchise as such, nevertheless it was certificated by the Arizona Corporation Commission to do business as a water utility for the public convenience and necessity. Such a certificate creates a monopoly and, in the public interest, the utility is protected from all competition. If the value of the plant and property of the public utility does not include an item for the certificate as property, then in order to provide "just compensation" it must be included in going concern value.

■ Whether this is included as property under the statute or as going concern is immaterial and a question we need not reach. If the operation of the utility is profitable, it obviously has an increased value and this value will influence the market price as between a willing buyer and a willing seller. In determining the total value so as to arrive at just compensation, some consideration must be given to the utility's exclusive right to engage in business. In City of Phoenix v. Consolidated, supra, it was given little or no significance but here it cannot be ignored simply because this utility is unusually valuable because of what it earns.

■ We do not question whether the earnings are justified by the capital investment. Such is a matter exclusively within the domain of the corporation commission and we will not test its judgment in a collateral attack. We assume that the corporation commission has fulfilled its duty under the Constitution and laws of this state and that the rates allowed are fair and reasonable.

■ The value of a certificate may be reached by considering the income which would probably be earned by the tangible property of the plant and system of the utility.

"So in considering a question of this type we said that, while loss of business profits as such was not allowable, yet 'in default of more direct evidence of sale value' present value of 'clearly to-be-expected future earnings' might be considered. Brooklyn Eastern Dist. Terminal v. City of New York, 2 Cir., 139 F.2d 1007, 1013, 152 A.L.R. 296, certiorari denied City of New York v. Brooklyn Eastern Dist. Terminal, 322 U.S. 747, 64 S.Ct. 1158, 88 L.Ed. 1579. As we there pointed out, this is not an award for business losses, such as was condemned in United States ex rel. T.V.A. v. Powelson, supra [319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390], but is a means of finding present worth in a legal interest which must be judged by its productiveness. This same view is stated with respect to a franchise to maintain a bridge in Monongahela Nav. Co. v. United States, supra, 148 U.S. 312, 328, 13 S.Ct. 622, 627, 37 L. Ed. 463, where the Court said: 'The value, therefore, is not determined by the mere cost of construction, but more by what the completed structure brings in the way of earnings to its owner.'

"Hence while evidence of profits achieved or about to be achieved on a piece of realty is received most hesitantly, Gauley & Eastern Ry. Co. v. Conley, 84 W.Va. 489, 100 S.E. 290, 7 A.L.R. 157, with annotation 163–175; Orgel, op. cit. supra, §§ 161, 216; Westchester County Park Commission v. United States, 2 Cir., 143 F.2d 688, 691, 693, certiorari denied 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583, yet the standard method of valuing a franchise is on the basis of its earnings, past as well as prospective. [Citation of cases]." United States v. Brooklyn Union Gas Co., supra, 168 F.2d 391, 395–396.

■ Past earnings are, of course, not conclusive as rates may be reduced by the corporation commission, Kennebec Water

District v. City of Waterville, 97 Me. 185, 54 A. 6, 60 L.R.A. 856, but earnings are indicative of the value of a certificate and must be accorded such weight as the trier of fact in the exercise of sound judgment is willing to give to them.

"The property to be considered under existing circumstances must be regarded and appraised as having the characteristics of a going business in operation in plaintiff's territory with all proper considerations such as, without limitation thereto, the properties and franchises in themselves and as a source of income, rates, net income and profit present and prospective." East Booth Bay Water District v. Inhabitants of Town of Booth Bay Harbor, 158 Me. 32, 41, 177 A.2d 659, 664.

Apparently Tucson embarked upon a course of acquiring private water companies in and about the vicinity of the municipality, having acquired about one hundred water companies in recent years. Evidence was offered and received by the court of the sales price of over thirty of these companies. Testimony for El Rio by one of its expert witnesses who considered some of the sales as comparable or at least as having some value in arriving at his opinion was to the effect that the average price paid was $360 per connection. He stated that the use of the comparable sales method commonly uses a unit price or index to value similar to price per acre or price per front foot. For the water systems, a common index item is the price per active service. The testimony established that El Rio had about 1,000 connections, 865 of which were active. On the basis of active connections the market value of El Rio as a water utility would be in excess of $311,000.

 The City argues that comparable sales are not a proper element in arriving at going concern value. Its argument in the lower court was that such sales were not the proper basis for the opinion of an expert nor admissible to be considered by the court in estimating the market price of

El Rio's property. However, comparable sales are usually the only suitable method for determining valuation as between a willing buyer and a willing seller. City of Phoenix v. Consolidated Water Co., supra. It is only because of the difficulty in finding comparable sales of utility properties that other evidence is admitted to establish market value. The City now asserts that the sales were not, in fact, comparable. No objection was made in the lower court on this basis. We will not now review the evidence to determine whether the objection would have been proper if it had been timely made. Skousen v. Nidy, 90 Ariz. 215, 367 P.2d 248.

 By A.R.S. § 9–518, subsec. A, the legislature provided the compensation to be paid a public service corporation "for the taking of its *plant, system* and *business,* which shall include the fair and equitable value of the *plant, system* and *business* taken, including its value as a going concern * * *." That section was repealed in 1962 and in its place was enacted language providing compensation to be paid for the taking of the *"plant* and *property* of the public utility which shall include [etc.] * * *." It is appellee's position that, in order to ascertain the fair and equitable value of the plant and property, the court should consider and take into account all elements that will throw light upon what is fair and what is equitable to both the City and El Rio and then proceed to determine an overall value. With this we agree. Assuming that the legislature intended to delete any item of compensation for business, nevertheless, in a case such as this where the Constitution requires just compensation and the statute requires a fair and equitable valuation, nothing less than the full market value of El Rio's properties would be in compliance with the Constitution and mandate of the legislature. The difference, if any, between the reconstruction new cost depreciated and the fair market value must be allowed. Manifestly, earnings and comparable sales are some evidence of present fair market value.

The statements of the Court in City of Thibodaux v. Louisiana Power & Light Co., D.C., 225 F.Supp. 657, are consistent with the law as we find it to be in Arizona. There, $165,654 was awarded for the physical property and $315,031 for the franchise determined by the value of the present income. The Court stated:

"The Court understands the law to be that when valuing a piece of land, one may not divine whether it may someday have an ice cream parlor or a federal reserve bank on it. Similarly when the State, under its sovereign power seized property with a hardware store upon it, one may not presume that the state is going into the hardware business and thus evaluate the business itself and future earnings from that business. * *

"However, the instant situation presents a different case. The City is seizing this property to use it in the same manner and for the same purpose as its present use. The City is in fact seizing a going business to continue it as a going business. * * * The City is not buying the poles, lines and equipment to clear them away and build a school. The City wants the Power Company's distribution system and its customers. It is in this light that the 'willing buyer-willing seller' concept must be viewed and rationalized to fit the novel circumstances of this case." 225 F.Supp. 657, 665–666.

■ We construe subsection B of § 9–518, A.R.S. (Laws of 1962), as meaning that there shall be included in the fair and equitable value of the plant and property an amount for going concern value. What the court below ascribed the $151,000 to does not affect the outcome of this appeal. El Rio had value over and beyond its cost of reproduction new less depreciation. It was incumbent upon the court below to fix that value in such an amount as would fairly and equitably compensate El Rio. We

cannot say that the judgment has no basis in either earnings or comparable sales.

Judgment affirmed.

BERNSTEIN, V. C. J., and UDALL, LOCKWOOD, and McFARLAND, JJ., concur.