436 P.2d 147

**ARIZONA WATER COMPANY, a corporation, Appellant,**

v.

**CITY OF YUMA, a municipal corporation, Appellee.**

No. 1 CA–CIV 494.

Court of Appeals of Arizona.

Jan. 17, 1968.

Benton & Case, Yuma, and Fennemore, Craig, von Ammon, McClennen & Udall, by Kent A. Blake, Phoenix, for appellant.

John B. Wisely, Jr., City Atty., City of Yuma, and Powers & Rehnquist, by William H. Rehnquist, Phoenix, for appellee.

STEVENS, Judge.

This appeal involves a condemnation action brought by the appellee, City of Yuma, hereinafter referred to as The City, against the appellant, Arizona Water Company, hereinafter referred to as The Company, to condemn the waterworks system, including all plant, property and water rights used in distributing domestic water used in the City of Yuma, Arizona, and environs. There was no issue raised as to the right of condemnation. The sole issue in dispute was the amount of just compensation which The Company was entitled to receive.

The Company is an Arizona corporation, privately owned, engaged in the distribution and the sale of water for domestic, industrial and commercial uses in the State of Arizona. Yuma is the largest City in the State served by The Company, and the properties, customers and volume of business in Yuma represented about ⅓rd of the entire properties of The Company. The Company has one or more certificates of convenience and necessity from The Arizona Corporation Commission. The Company has a central office located in Phoenix at which location it has a staff which performs centralized billing, accounting, engineering, purchasing and other functions normally handled by a central office.

In September, 1960, at an election held, the voters of the City of Yuma approved the acquisition of the Company's water utility plant serving The City. Some two years later this action was brought in the Superior Court for Yuma County by The City for the purpose of condemning The Company's utility plant. The action was tried in February, 1966. In May 1966, the trial court entered a judgment based upon the verdicts which the jury had returned at the close of the trial.

Counsel, by written stipulation, agreed that the reproduction cost, new, of the supply and distribution system and the general plant of The Company in Yuma and environs, as of 31 December 1962, was $6,461,829.00, and that the reproduction cost less depreciation on the same date was $4,822,542.00. The stipulation specifically excluded the value of The Company's water rights, going concern value, and severance damages. By stipulation the matter of the value of additions to the water system which were made after 31 December 1962 was reserved for determination in a proceeding to be conducted after the conclusion of the trial in question. These matters are not before the Court. At the trial there was evidence bringing forward the 31 December 1962 stipulated values to the date of trial, the trial date being the controlling date under the statute hereinafter quoted. At the trial there was also evidence as to the value of the items specifically excluded from the stipulation above referred to.

The guiding principle before the trial court in setting the amount of compensation was A.R.S. § 9–518 Subsection B, which provides:

"The court or jury shall ascertain the compensation to be paid for the taking of the plant and property of the public utility, which shall include the fair and equitable value of such plant and property, including its value as a going concern, and the actual and consequential damages, if any, sustained by the public utility by reason of the severance from the other plant and property of the public utility of the plant and property to be taken. Compensation and damages shall be fixed as of the date of the commencement of the trial at which such compensation and damages are finally determined."

This statute was added by the Laws of 1962 and is significantly different from the general real property condemnation statutes.

During the trial, three valuation experts expressed opinions as to the total amount of compensation which The Company was entitled to be paid. There was a substantial difference of opinion as to value expressed by The City's valuation witness and the opinions as to value expressed by The Company's two valuation witnesses. Ernest North, testifying for The Company, stated that in his opinion the fair and equitable value of the properties of the Arizona Water Company in Yuma includng going concern value and all other items exclusive of severance damages, was $5,822,000. He further estimated severance damages as $200,000. John Luthin, also testifying for The Company, fixed compensation at $5,744,000, including in that figure the sum of $300,000 as severance damages. As will be pointed out later, the Court reduced the amount of his opinion as to severance damages from $300,000 to $200,000. William Patterson, testifying for the City, fixed the amount of compensation at $4,300,000 and included in this figure the sum of $10,000 for severance damages.

The jury returned a verdict in the amount of $4,999,213 and by separate verdict stated that the amount of severance damages included in the larger figure was $50,000. The Company then appealed seeking a review of several rulings made by the trial court.

■ First, The Company contends that it was entitled to a change of venue because a substantial portion of the jury were customers of The Company, therefore, the amount of the verdict would directly affect their water rates after The City took over The Company. A motion for change of venue was filed pursuant to the provisions of A.R.S. § 12–406. Change of venue under this section is not a matter of right but is within the sound discretion of the court. A.R.S. § 12–408 provides for a change of venue by the opposite party when a county is a party. The Company does not contend that this section is applicable when a municipal corporation is a party. The Company does contend that the reason for granting a change of venue, as a matter of right when the county is a party, is applicable to this case. The Company points out that The City of Yuma had a population greater than the entire remaining population of Yuma County; that the acquisition of the water properties of the appellant was of major importance to the residents of Yuma and that many headline stories and front page editorials were written and published in the Yuma newspapers in connection therewith; that the bonds to be issued by The City for the purchase of The Company's properties will be revenue bonds and that the water rates set by The City must be sufficient to pay all bonds and interest thereon plus all other expenses of operating the waterworks; that nine of the eleven jurors who (on stipulation) determined the compensation to be paid for the water properties were customers of the appellant.

■ Whether a change of venue should have been granted on the basis that The City constituted such a large part of the county that the reasoning behind A.R.S. § 12–408 should be applied is refuted by the case of Riverside County Flood Control & Water Conservation District v. Joseph W. Wolfskill Company, 147 Cal.App.2d 714, 306 P.2d 22 (1957), in which the appellant had sought a change of venue against a county-wide flood control district under a statute somewhat similar to A.R.S. § 12–408. The California court said that this was a legislative and not a judicial problem. This reasoning is applicable to our case also. The Legislature specified "county" in the statute tending to indicate that if less than the whole county were involved, no change of venue could be had as a matter of right.

■ As to the adverse newspaper publicity, all the articles attached to the exhibits were dated 1960. The case wasn't actually tried until February 1966. The articles were directed to the issue as to whether the voters should approve The City's decision to condemn The Company's property. Due to the nature of the publicity and the remoteness from the date of trial it does not appear that it was sufficient to allow a change of venue. In order to support a change of venue, newspaper publicity must be widespread and close to the time of the trial. Pennsylvania Railroad Company v. City of Reading, 254 Pa. 110, 98 A. 791 (1916).

■ As to the contention that there should have been a change of venue because the jurors had an interest as taxpayers in seeing that the award was kept to a low amount, the case of City of Prescott v. Sumid, 30 Ariz. 347, 247 P. 122 (1926) appears to be controlling. In that case the Supreme Court of Arizona recognized the majority rule to be that in an action against a municipality, a taxpayer thereof is disqualified from sitting on a jury. However, the court declined to follow this rule and said that the mere showing that a prospective juror was a taxpayer was not sufficient to bar him from sitting on a jury. Applying this rule to the present case, the mere fact that some of the jurors were taxpayers or prospective water customers is not sufficient grounds for a reversal. During the voir dire of the jury, extensive questioning was conducted by counsel for appellant to determine prejudice of the jury. The reporter's transcript reveals that no actual prejudice was indicated by the voir dire.

It is our conclusion that there was no abuse of discretion by the trial judge in denying the motion for change of venue.

Second, The Company contends that it was error for the trial court to sustain the objection to testimony of The Company's witness, North, as to the value of the certificate of convenience and necessity of The Company to do business in the Yuma area. North testified on direct examination that The Company had a certificate of convenience and necessity from the Arizona Corporation Commission, which, in his opinion, had a value. The record on appeal does not disclose whether the certificate referred to pertains only to the Yuma area or whether the certificate of convenience and necessity embraced other properties within the State. The record does imply that the certificate of convenience and necessity in question relates only to the Yuma property, the whole of which was taken by this proceeding. Therefore, we are not concerned here with the taking of a portion of an operating unit and the effect thereof, if any, on the value of the certificate of convenience and necessity. Counsel for The City objected to North's testimony as to any value being placed on the certificate of convenience and necessity, and this objection was sustained by the trial court. It appears from the record that North had intended to include the value of the certificate of convenience and necessity as part of the severance damages.

■ The Company relies heavily on City of Tucson v. El Rio Water Company, 101 Ariz. 49, 415 P.2d 872 (1966), to sup-

port its position that it was error to exclude testimony as to the value of the certificate of convenience and necessity. In that case the Supreme Court stated at page 52, 415 P.2d at page 875

"While there is no evidence that El Rio had a franchise as such, nevertheless it was certified by the Arizona Corporation Commission to do business as a water utility for the public convenience and necessity. Such a certificate creates a monopoly and, in the public interest, the utility is protected from all competition Commission to do business as a erty of the public utility does not include an item for the certificate as property, then in order to provide 'just compensation' it must be included in going concern value."

We must note at this point that North did not include the certificate as either property or part of going concern. As stated above, he sought to value the certificate as part of the severance damages. We hold that the value of the certificate of convenience and necessity was properly excluded by the trial court as not being a legitimate element of severance damages. The certificate has value only while the holder of the certificate is a going concern. When the holder of the certificate loses its right to do business in a particular locality, then the certificate of convenience and necessity becomes valueless. Under the circumstances of this case, the certificate can be considered only as an element of property or as an element of going concern value and may not be considered in the assessment of the severance damages. If the testimony of North had been offered to prove an element of property value or an element of going concern value, then the value of the certificate of convenience and necessity would have been properly admitted by the trial court. It is a familiar principle of law that when a party offers evidence for a purpose for which it is inadmissible and the judge excludes the evidence, the party cannot complain of the ruling although for another purpose it could have been properly admitted. "Mc-

Cormick on Evidence", Section 51, page 114; 1 "Wigmore on Evidence" 3rd Edition, Section 17, page 320; "Udall on Evidence", Section 13, page 31. The evidence was not admissible for the purpose for which it was offered. It was proper to exclude this evidence.

Third, The Company contends that it was reversible error for the trial court to refuse to allow The Company's witness, Luthin, to testify concerning loss of income during the reinvestment period. Luthin testified, that in his opinion, The Company would suffer severance damages in the amount of $300,000. He allocated $200,000 of this amount to the cost of recovery of the Phoenix office operation. The other $100,-000 was "actual and consequential damages" the appellant would suffer from the loss of the income from the proceeds received from the condemnation award during the period it would take to reinvest such amount in either the acquisition of new water properties or in expansion of remaining water properties. Counsel for The City objected to Luthin testifying concerning this loss of income during the reinvestment period. The court heard argument out of the presence of the jury and sustained the objections. Prior to the objection, Luthin had prepared a chart giving a total of $300,000 severance damages. The trial judge directed that this amount be reduced to $200,000 and instructed the jury to disregard the original $300,000 figure.

The Company cites City of Phoenix v. Consolidated Water Company, 101 Ariz. 43, 415 P.2d 866 (1966), to support its contention that it was error to exclude this item as part of severance damages. In that case Luthin also testified as an expert witness. The following appears on page 48 of 101 Ariz., on page 871 of 415 P.2d:

"One final question remains to be disposed of. In Luthin's appraisal of the value of Consolidated's property, he allowed a total of nine per cent of the value of the physical properties as the

value of going concern, stating that this was to produce 'an amount of total value to fully indemnify the owners for the loss of the water utility'. Two components of cost to the owner were considered in the allowance for going concern: First, a finders fee of five per cent; and, Second, loss of income of four per cent suffered during the period of transition. * * * ·

"The cross-examination of the City's expert consulting engineer established that the appraisal guide, Marston and Agg, used by the witness, gave valuations of going concern for utilities as running between 2.30 per cent and 14.30 per cent of physical value and that the average appeared to be 9.4 per cent. Accordingly, we do not pass upon the question of whether Consolidated's expert used the proper components in determining going concern value. We think it is sufficient to say that the allowance of nine per cent of the value of Consolidated's physical properties, if such were allowed, would not be unreasonable."

In our opinion this case does not present authority relative to allowing damages for loss of income during the reinvestment period as part of severance damages. Neither The City nor The Company have cited any cases directly in point and we have not been able to find any direct authority.

██ There are sound reasons why we believe it was proper to reject this testimony. As a general rule, remote and speculative damages are disregarded in condemnation cases, 1 Orgel, "Valuation Under Eminent Domain", 2nd Ed., § 64, P. 293. Loss of income during the reinvestment period is a good example of remote and speculative damages. It would be a matter of conjecture to attempt to determine the loss of income during the reinvestment period. It is possible that The Company might never find an investment from which it could secure a rate of return similar to that made on the property condemned. Conversely, due to changes in economic conditions, it might be able to make an investment with a rate of return somewhat higher than it is presently receiving. Such damages would not be measurable with any degree of certainty and they should be rejected as too speculative.

██ The Company's fourth contention is that it was entitled to receive as part of the statutory "actual and consequential damages" the penalty it would be required to pay its bond holders from mandatory retirement of bonds due to condemnation. The Company had issued mortgage bonds upon its utility properties, including the Yuma properties, to secure an indebtedness which it owed to the bond holders. There are complicated provisions in the bond indentures for payment of a penalty for early redemption of the bonds. in case of a condemnation of the company. It is not necessary to go into the details. of the redemption provisions and the consequent penalties. In the case of Oshkosh Waterworks Company v. Railroad Commission, 161 Wis. 122, 152 N.W. 859, L.R. A. 1916 F. 592 (1915), the Wisconsin Supreme Court said at page 864 of the N.W. Reporter, in disposing of a situation similar to the one before us:

"The city is under no duty to assume plaintiff's contract obligations. (citing case). It is bound to pay only the just value of the utility. The fact that plaintiff has entered into a contract whereby it will cost it something to deliver the utility to the city cannot affect the reasonable value of the utility. The city is not concerned with the terms of settlement between the utility and its creditors so long as it receives the property free from liens."

We determine the holding in the Oshkosh case to be applicable to the case with which we are now concerned. The City was not a party to the indenture agreement. The agreement was between The Company and its bond holders. It is true that The Company is entitled to damages caused by the condemnation. However, we do not take:

the view that The City has "caused" the damages which are claimed in this situation. As has been pointed out by The City, The City caused the damage only in the sense that "but for" the condemnation, The Company would not be called upon to pay any penalty. This "but for" test of causation has been rejected in other fields of the law and we hold that it has no application in the field of condemnation.

Judgment affirmed.

DONOFRIO, Acting C. J., and JACK D. H. HAYS, Superior Court Judge, concur.

NOTE: Chief Judge JAMES DUKE CAMERON having requested that he be relieved from the consideration of this matter, Judge JACK D. H. HAYS of the Superior Court was called to sit in his stead and participate in the determination of this cause.