444 P.2d 747

Gerald THORNTON, Hughie DeMore, Walter H. Cave, Gerald T. Young, Wayne Thornton, and Otho Thornton, Appellants,

v.

SOUTHWEST FLOUR & FEED COMPANY, an Arizona corporation, Appellee.

No. I CA–CIV 635.

Court of Appeals of Arizona.
Sept. 11, 1968.

Ryley, Carlock & Ralston, by Frank C. Brophy, Jr., Phoenix, for appellants.

Burns, Ferrin & Ehrenreich, by F. Britton Burns, Phoenix, for appellee.

MOLLOY, Judge.

In this appeal, we are asked to set aside a judgment of the trial court, sitting without a jury, holding that appellants are liable under the terms of an instrument signed by them guaranteeing the indebtedness of a corporation to a creditor of the corporation.

In October, 1962, all of the appellants were shareholders and directors of Garden City Farms, Inc., a corporation engaged in farming a tract of land in the Harquahala Valley. It had been decided that Garden City would use 420 acres of its land to raise a crop of safflower during the 1962–63 crop season.

To obtain needed financing, Garden City applied to appellee, Southwest Flour & Feed Company, for a loan in the amount of $21,-000, to be secured by a crop mortgage on the safflower planting. Southwest had previously made crop loans to Garden City, and it was amenable to making the loan applied for but for various reasons, it required, in addition to the crop mortgage, that appellants execute a certain "Continuing Guaranty" in favor of Southwest. Each of the appellants executed the instrument, which provides, in part, as follows:

"In consideration of Southwest Flour & Feed Company, Inc., hereinafter called Co., at my request giving or extending terms of credit to Garden City Farms, Inc., hereinafter called debtor, I hereby give this continuing guaranty to Co., its transferees or assigns, for the payment in full of any indebtedness, direct or contingent, of said debtor to said Co. up to the amount of Twenty one thousand and no/100 dollars * * *. It is expressly understood that this guaranty covers but is not limited to, any loans that may now be existing, or any renewals thereon, as well as any other or further loans that may be made, including renewals thereon, during the life of this guaranty * * * and I waive all notice of any kind whatsoever in connection with any obligations of the debtor.

*   *   *   *   *   *

"This continuing guaranty shall continue in full force and effect until surrender and delivered to the undersigned or until a revocation of said continuing guaranty signed by the undersigned, and accepted in writing by said Co. is recorded in the office of the County Recorder of Maricopa County, Arizona."

Appellants make no contention that this guaranty was ever cancelled or revoked. Most of the appellants were busy in a number of enterprises during the period of time in question. Several of them made affidavits to the effect that they "forgot" the existence of the guaranty given by them to Southwest.

Pursuant to crop financing agreement, Southwest, at various times between October 5, 1962, and July 11, 1963, made cash payments to Garden City. During the same period, and somewhat beyond, Garden City periodically ordered and used in connection with the safflower crop a large quantity of fetilizer which was furnished by another corporation, Arizona Pest Control Company. Much of the testimony and argument of the parties in this case is directed to the question of whether this material was furnished to Garden City on the strength of credit extended to Garden City by Southwest.

On August 9, 1963, after the safflower crop had been marketed and the proceeds thereof known, Mr. Bonsall, the officer of Southwest in charge of the Garden City loan, had a meeting with appellants DeMore and Cave, who were officers of Garden City. Bonsall had prepared a summary of account which showed that, after all charges and credits, there was owing to Southwest from Garden City $10,152.17. One of the charges included in the summary was a charge of $10,602.56 for the Arizona Pest fertilizer. Hence, if this amount were not owing from Garden City to Southwest, the state of account between Southwest and Garden City would have been a debt owing *from* Southwest *to* Garden City in the amount of $450.39. At the end of the meeting, DeMore signed the note for $10,152.17 payable by Garden City to Southwest and also executed another crop mortgage on an existing crop of sudan grass as security for payment of the note. DeMore's authority to sign the note in behalf of Garden City is not in question.

In its two-count complaint, Southwest brought suit against Garden City on its $10,152.17 note, plus interest, and against

appellants on their guaranty for a like amount with interest, attorney's fees and costs. After trial, the trial judge made findings of fact and conclusions of law and entered judgment for plaintiff on both counts. Garden City did not appeal.

We must view the evidence in the light which is favorable to sustaining the judgment rendered, and we must affirm if we may do so on any reasonable view of the record. Rossi v. Stewart, 90 Ariz. 207, 367 P.2d 242 (1961). While appellants contend that the trial judge did not make complete and proper findings of fact, we are bound by the findings made unless clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of witnesses, and where the record is so clear that the reviewing court does not need the aid of findings, it may overlook defects therein. City of Phoenix v. Consolidated Water Company, 101 Ariz. 43, 45, 415 P.2d 866 (1966). Bearing these principles in mind, we have little difficulty in affirming the judgment rendered.

Appellants' basic contention is, in effect, that there was actually no net balance owed by Garden City to Southwest when it executed the note in question, as opposed to an indebtedness owed by Garden City to Arizona Pest Control, which is asserted to be a separate and independent creditor, " * * * such as Union Oil Company of California and Arizona Public Service Company * * * " Appellants argue that Southwest had no authority to pay any of the crop proceeds to Arizona Pest Control, or to include the value of materials furnished by Arizona Pest Control in calculating the account between Southwest and Garden City.

The shortest answer to appellants' contention is that the appellant DeMore, in what we must regard as an authorized corporate act, acknowledged a corporate debt of Garden City to Southwest in the amount set forth in the note. Though DeMore testified at the trial that he was unaware that the Arizona Pest Control account was included in calculating the amount due Southwest, the trial court may have concluded that the accounting was not so complex but that inclusion of the sum owed Arizona Pest Control would have been apparent to an experienced businessman. The trial judge found a consideration for the note and rendered judgment thereon against the corporation. The corporation, although represented at the trial by counsel for appellants, took no appeal.

While Southwest and Arizona Pest Control Company were separate and unrelated entities, Mr. Bonsall was an officer and substantial shareholder in both corporations. All of his actions were consistent with the theory that Arizona Pest Control relied upon Southwest's credit. There was testimony that one of the appellants solicited an arrangement by which Arizona Pest Control would furnish fertilizer to Garden City on the line of credit extended to Garden City by Southwest, secured by the mortgage held by Southwest. This mortgage provided, inter alia, that it would be security for any additional sums " * * * advanced or paid out for the account of the mortgagor * * * in connection with or incident to the maturing, harvesting and marketing of said mortgaged crops and the production thereof." There is no question but what this fertilizer was ordered by Garden City and was used in the production of the safflower crop.

Under these circumstances, we believe that the trial judge was justified in concluding that the execution of the note was at least a "renewal" of "direct or contingent" indebtedness of Garden City to Southwest, and was therefore included within the broad terms of the guaranty executed by appellants.

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concurs.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.