396 So.2d 199 (1981)
Fern E. KALB, Appellant,
v.
INTERNATIONAL RESORTS, INC., Appellee.
Nos. 80-20, 80-1666.
District Court of Appeal of Florida, Second District.
February 11, 1981.
Rehearings Denied March 31, 1981.
*200 John T. Allen, Jr., St. Petersburg, for appellant.
Leonard S. Englander of Schrader, Englander & Schachter, St. Petersburg, for appellee.
SCHEB, Chief Judge.
International Resorts, Inc., sued Fern E. Kalb alleging that she had fraudulently induced it to purchase her motel in 1977 by representing that the motel's gross income for 1976 was $150,000 when, in fact, it was $97,565. A jury awarded Resorts $250,000 in compensatory damages. We hold that the trial court erred in refusing Kalb's request to admit Resorts' income tax returns for 1977 and 1978 showing the motel's gross incomes for those years and in refusing her request to admit subsequent real estate listings of the property by Resorts.
In these appeals Kalb raises several points. We have examined each contention and conclude that only three merit discussion. First, Kalb contends that Resorts did not introduce sufficient evidence to support the jury's conclusion that she acted fraudulently. We disagree. The evidence disclosed that Hunter, Resorts' agent, was concerned about verifying the $150,000 gross-income figure which Kalb had given the real estate agent who prepared the listing. He testified that just prior to the closing, Kalb brought him two containers filled with checks, bank statements and bills in no specific order. She stated that there were no books or records kept and that she had not yet filed her tax return. Hunter and two *201 real estate agents examined the records but could not verify the gross-income figure. Hunter then checked with Kalb's bookkeeper and found that Kalb's tax returns were delinquent and could not be verified. Finally, he contacted Kalb. He testified that she said "she could guarantee ... that she could produce evidence of [at least] $150,000 ... gross income" for 1976. Hunter testified that it was solely on this basis that he closed the transaction.
Kalb argues that Hunter should not have relied on the gross-income figure because his review of Kalb's documents should have led him to question its accuracy. Therefore, she contends that Hunter was negligent in failing to ascertain the actual 1976 gross income. Florida courts have recently rejected this contention. In Besett v. Basnett, 389 So.2d 995, 997 (Fla. 1980), the supreme court, quoting section 540 of the Restatement (Second) of Torts (1976), stated, "The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." See Upledger v. Vilanor, Inc., 369 So.2d 427 (Fla. 2d DCA 1979). Even though Hunter might have been negligent in failing to establish the actual gross income, that does not bar him from recovery. As the supreme court stated in Besett:
A person guilty of fraud should not be permitted to use the law as his shield. Nor should the law encourage negligence. However, when the choice is between the two  fraud and negligence  negligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresentor.
Id. at 998. Consequently, although Hunter's limited investigation may have given him cause to question the gross-income figure contained in the listing sheet, he was justified in relying on Kalb's guarantee that she could produce evidence supporting the figure. Accordingly, the evidence supported the jury's finding of liability.
Second, Kalb contends that the trial court erred in denying her motion for directed verdict because the evidence did not support the award of damages. Resorts sought damages of $250,000 based on the premise it would have offered only $500,000 rather than $750,000 had it known the motel's actual 1976 gross income. Kalb argues that the jury erred in relying solely on gross income to determine the actual value of the motel at the time of sale.[1]
Initially, we note the court properly instructed the jury that, "The measure of damages for fraud in the sale of property is the difference between the value of the property as represented and the actual value of the property at the time of sale." Williams v. McFadden, 23 Fla. 143, 1 So. 618 (1887); Srybnik v. Ice Tower, Inc., 162 So.2d 294 (Fla. 3d DCA 1964). The only testimony of the actual value of the motel was given by Hunter and Siemetz, a real estate agent who assisted Hunter in purchasing the motel. Hunter testified that he computed his offer and the sale price of $750,000 by multiplying the motel's listed 1976 gross income of $150,000 by five. He explained that he, Siemetz and another agent had arrived at this method of calculating value by comparing the asking prices of other motels in the area with their gross incomes. The motels that were for sale for as much as six times their annual gross incomes were in immaculate condition, and, based on the condition of Kalb's motel, they concluded that five times gross income would be a reasonable price.
Siemetz testified that he, Hunter and the second real estate agent discussed recent sales of other motels and the gross incomes of those motels in arriving at the offer of $750,000 for Kalb's motel. He detailed how they had examined per unit prices of the motels and prospective per unit incomes as well as a market analysis.
Hence, calculating value by using a multiplier times the gross income incorporated more than just a consideration of gross *202 income in that a number of factors determined the value of the multiplier. These included comparable sales, location and condition of the property and prospective income. Accordingly, we conclude that the jury did not rely solely on the gross income of Kalb's motel in calculating damages and that there was sufficient evidence to support its award.
Finally, Kalb contends that the trial court improperly excluded Resorts' 1977 and 1978 tax returns which showed the motel's gross income as well as a valuation of the buildings and that it improperly excluded Resorts' subsequent listings of the property for sale. The tax returns showed gross incomes of $159,352 for May through December 1977 and $195,126 for 1978. The 1977 return also showed a valuation of $628,723.21 for the buildings and improvements without the land. The listing agreements showed that Resorts listed the property in 1978 for $1,300,000 and again in 1979 for $1,159,000.
The court, without further explanation, excluded all of these documents as being irrelevant. In doing so it is likely the court concluded that the increases in gross income, the apparently high valuation, and the higher listing prices were attributable to a change in management, as it did later in denying Kalb's motion to vacate the judgment.[2] These changes, however, could have been due to many factors other than just a change in management; for example, general economic changes, fluctuations in the tourist market, changes in transportation costs, advertising campaigns and varying weather conditions. On that basis Kalb might have shown that 1976 gross income was abnormally low and did not reflect the actual value of the motel. Hence, the documents were relevant,[3] and the trial court improperly excluded them. § 90.402, Fla. Stat. (1979).
Given the sparsity of evidence on value, the only way the jury had of determining actual value at the time of the sale was the formula of gross income times a multiplier. Therefore, it was crucial for the jury to have had as much information as possible comparing the 1976 gross income with that of other years. If it was unusually low and not representative of the motel's gross income generally, the jury might well have awarded fewer damages. Consequently, the trial court's exclusion of the tax returns and real estate listings constituted reversible error.
Accordingly, we reverse the jury's award of damages; otherwise, we affirm. We remand for a new trial on damages.
BOARDMAN and DANAHY, JJ., concur.
NOTES
[1] Kalb relies on City of Tucson v. El Rio Water Co., 101 Ariz. 49, 415 P.2d 872 (1966), and Department of Highways v. McDuffie, 240 La. 378, 123 So.2d 93 (1960).
[2] Kalb appeals the denial of this motion in Case No. 80-1666.
[3] We are aware of the principle that "Neither the `asking price' of an owner of real property, no buyers appearing, nor the offer made by a buyer to an owner would appear to be admissible on the question of value." 13 Fla.Jur. Evidence § 172 (1957); see Leslie E. Brooks Co. v. Long, 67 Fla. 68, 64 So. 452 (1914); Atlantic Coastline R. Co. v. United States, 132 F.2d 959 (5th Cir.1943). The rationale for this rule is that, "An offer for property depends on so many considerations that it is not generally regarded as a sound test of value. This kind of proof is said to be so easily manufactured that its admission on [sic] evidence should not be tolerated." 13 Fla.Jur. Evidence § 172 (1957).

In Brooks and Atlantic Coastline R. Co., the plaintiffs as lessee and as landowner were seeking damages for breach of a lease agreement and for an inadequate valuation in a condemnation action respectively. They had reason to attempt to establish higher actual values of the leasehold and the property by "manufacturing" offers since to do so would increase their potential damages. On the other hand, in the present case Resorts would increase its entitlement to damages by establishing as low an actual value at the time of sale as possible since its damages were the difference between the actual value of the motel and the sale price computed on the basis of the incorrect gross income. Consequently, Resorts had no incentive to "manufacture" the offers to sell. Indeed, this is shown by the fact that Kalb rather than Resorts attempted to introduce the listings.
Further, although listing offers might generally be inflated above actual value, Resorts would have had an opportunity to explain that at trial. Consequently, we find neither the rationale for the exclusionary rule nor the rule itself applicable.
Finally, Resorts' listings constituted admissions against interest. See cases cited at Annot., 7 A.L.R.2d 781, 814 (1949).